### Curtis Emerson v. Samuel T. Atwater and others.

*Defendant concluded by statements in his answer.*—Bill to redeem lands from a deed absolute in form, but alleged to have been given to secure the payment of indebtedness from complainant to defendant, the grantee. Defendant answered under oath—though oath was waived—averring that at the date of the deed, complainant was indebted to him in the sum of $30,000, and that the deed was made to him in satisfaction of this demand, and not as security. On a hearing on pleadings and proofs, the deed was adjudged to be a mortgage, and a reference was ordered to a commissioner to take an account between the parties, and report the amount due. It was held, that defendant was precluded by his answer from showing on the reference that a larger sum than the $30,000 was due him from complainant at the date of the deed.

EMERSON *v.* ATWATER.

If the amount of the indebtedness was incorrectly stated in the answer by mistake, defendant should have applied to the Court, showing how it occurred, and asking leave to amend the answer in that particular.

*When answer conclusive on other defendants.*—The assignee of said grantee interposed the plea of a bona fide purchase without notice, which plea, on the hearing, was found untrue. It was held, that as he was then undefended except by the answer of his grantor, and was entitled to all the benefits of that, so, also, he was concluded by its statements to the same extent as his grantor himself. He, also, was therefore concluded from showing that more than the $30,000 was due.

*Adjusting accounts: annual rests: interest.*—Annual rests directed in adjusting accounts between mortgagor and ‖mortgagee, and interest computed on each item of the account, where this course was found to be warranted by the practice of the parties.

*Exceptions to the commissioner's report* are proper only where the commissioner has come to an erroneous conclusion of law or fact on the evidence before him, touching the reference.

If a commissioner errs in not calling parties before him, to produce books, papers, &c., the proper remedy of the party deeming himself aggrieved, is to apply to the Court for an order requiring him to do so. The error cannot be corrected by excepting to the report.

An exception that "commissioner has credited to complainant the sum of $9,210.37 for amount defendant has received on sales of lots, and interest thereon to May 5, 1860, whereas he should have credited a less sum," is too indefinite and uncertain to admit the raising under it of an objection that the commissioner did not allow to defendant a sum paid to a third person to perfect the title to the lands.

*Form of decree for redemption from absolute deed.*—Where, on bill to redeem, a deed absolute in form is adjudged to be a mortgage, and the mortgagee had, before bill filed, conveyed to one of the ‖other defendants, the decree should direct the amount due to be paid to the assignee, instead of the mortgagee.

It is proper, in such a case, to direct a sale of the premises to satisfy the amount due, in default of payment by the time fixed, instead of decreeing a strict foreclosure.

*Heard December 2d, 3d, 4th and 5th, 1862. Decided May 3d.*

Appeal in chancery from Saginaw Circuit.

The principal question in this case was disposed of by a decision of this Court reported in 7 *Mich.* 12. By the decree then entered, the case was ordered to be referred to a circuit court commissioner for the county of Saginaw, to take and state an account between the parties on a basis then settled. To the commissioner's report on this reference a large number of exceptions were taken by the defendants, the most of which, on the final hearing in the Circuit Court, were overruled, and decree entered that complainant pay to defendant Atwater the amount found

due — about $5,000 — and that defendants reconvey. In default of payment a sale in the usual manner in foreclosure cases was ordered, to satisfy the amount and costs.

Defendants appealed.

*W. L. Webber, S. T. Douglass, and J. L. Talcott (of Buffalo, N. Y.)* for defendants.

*J. Moore, G. C. Bates, and C. I. Walker* for complainant.

MANNING J.:

The exceptions are numerous. I shall not notice them all separately. The principal ones are, that the commissioner erred in fixing the indebtedness of complainant at the time the deed was executed at $30,000; in holding the answer of Atwater as to such indebtedness binding on Green; and in crediting complainant, in the account subsequent to May 27th, 1853, with the lumber shipped to Atwater previous to the execution of the deed, and then in his hands unsold. Most of the other exceptions to the commissioner's report will be found to turn on one of these.

Pleadings would avail little or nothing if parties were not bound by them. They would be worse than useless, if parties were permitted to allege one thing in them and to prove another on the trial, or at the hearing. Instead of aiding the court and parties in the subsequent investigation, by narrowing the field of controversy, they would serve as a lure to mislead and entrap an adversary. That the evidence must be confined to the issue between the parties, is a rule so well settled as to admit of no controversy. An attempt was made on the argument to take the present case out of this rule. It was said that if Atwater chose to rest the question of mortgage or no mortgage on a statement of indebtedness less in amount than what was due him in fact, he was not bound by such statement in a subsequent reference after the

question had been decided against him. I do not think the argument a sound one. I cannot admit that a fact material to the decision of a question, in one stage of a cause, can afterwards be changed or proved to be different when used by the same party in a subsequent stage of the same cause.

The bill was filed to have a deed given by complainant to Atwater declared a mortgage. In such cases the pecuniary embarrassment of the grantor, his indebtedness to the grantee, and inadequacy of consideration, are circumstances the Court looks to in determining the true character of the instrument. They were all set forth in the bill. And of the three, inadequacy of consideration is the most important. For without that why declare a deed a mortgage? No good would come of it; and there would be nothing to warrant the inference of undue advantage, always relied on by the Court, and made the basis of its action in this class of cases.

Defendants must be supposed to have known what they had to meet, and to have shaped their defense accordingly.

Atwater put in an answer on oath, although an answer on oath was waived by the bill, and Green filed a plea, stating himself to be a bona fide purchaser, without notice of complainant's equities. On appeal, we declared the deed to be a mortgage, and that Green was not a bona fide purchaser without notice, and directed a reference to ascertain the amount due from complainant to Atwater on the 27th May, 1853,—the date of the deed—and for an account to be taken of all subsequent dealings between the parties. Atwater in his answer to the bill says:

" This defendant further saith, that at the time of the execution and delivery of the said deed of conveyance by the said Emerson to him, he, the said Emerson, owed him thirty thousand dollars, for advances made to him theretofore, and became and was insolvent, and proposed to and did,

execute and deliver to this defendant, the said deed of conveyance, in fee simple, in consideration of the said debt — subject to said incumbrances described in said bill of complaint — and that said deed of conveyance was executed and delivered absolutely, without any condition, trust or agreement whatsoever, either express or implied; and that, at the time of the said conveyance, his said debt, together with said incumbrances, far exceeded the whole value of the ₁said lands; and that the statement in said bill of complaint, that such deed of conveyance was, or is, subject to any condition, trust or agreement, is wholly untrue.

"That at the time of the execution and delivery of the said deed of conveyance, this defendant held and owned a mortgage upon the said premises, for the first accruing part of his said demand, to the sum of $8,200, executed and delivered to him by the said Emerson — bearing date November 1st, 1850 — to secure to him the payment of the said $8,200 according to its terms (recorded November 5th, 1851, in B of mortgages, on pages 155 and 156), and that, at the time of the execution and delivery of the said deed of conveyance, the said mortgage moneys were wholly unpaid, as well as the balance of the said thirty thousand dollars: and that the said deed of conveyance was executed and delivered to him by the said Emerson in lieu of and as a substitute for the foreclosure of said mortgage, to release his equity of redemption in the said lands."

Here is a clear and explicit statement on oath of complainant's indebtedness to Atwater at the time the deed was given. There is no ambiguity in it. He is so particular as to state that a mortgage of $8,200 is a part of it, and that complainant's "said debt, together with said incumbrances" (incumbrances on the property due to others) "far exceeds the whole value of the said lands." Why this last statement if it was considered immaterial

by the pleader to the investigation that was about to follow? And if material, as it certainly is, can we suppose a debt of forty - six thousand dollars and upwards would have been stated in the deed and answer at $30,000? We can hardly presume such a mistake possible. And if a mistake, Atwater should have applied to the Court, showing how it occurred, and asking leave to amend his answer, which must be taken as true against him.

But it is insisted by Green's counsel that if Atwater's answer is binding on him, Atwater, as to complainant's indebtedness, Green is not bound by it. The ground of the objection is, that the answer of one defendant is not evidence against a co - defendant. This, as a general rule, is true where the interests of the different defendants are several and not joint. If Atwater had stated in his answer that when he conveyed to Green, he, Green, knew that complainant's deed to him was only intended as security for the payment of the aforesaid $30,000, the answer could not be received as evidence of that fact to disprove the truth of Green's plea. It would come within the rule referred to. But I do not understand the rule to go further than this; and that where a defendant seeks to get rid of one equity by interposing another, and fails in it, that the evidence that establishes the first equity against his gran. tor is not sufficient to establish it against him also.

The plea admitted the allegations in the bill; and it having been found untrue by the Court on the hearing, Green stood defenseless, except so far as he was protected by the answer of Atwater. He is entitled to all the benefits of Atwater's defense, but we know of no rule of law or equity giving him the right to claim and repudiate its benefits at the same time, or to claim a part and repudiate a part. Besides, he took the land subject to the equities between complainant and Atwater growing out of the agreement and deed of the 27th May, 1853. These equities did not cease, and the relation of the parties

was not changed by the conveyance of the land to Green. For complainant and Atwater continued to deal with each other thereafter as before, with the knowledge of Green, and without any objection on his part. And there is no pretence of collusion or combination between them to defraud Green. When this case was before us on the former appeal, we came to the conclusion that the deed to Green was itself a mortgage to indemnify him for past and future advances to Atwater, and that their interests were the same, and that for that reason Atwater could not be a witness to prove the truth of Green's plea: — 7 *Mich.* 31, 33.

I think the commissioner was right, therefore, in holding the defendants bound by the statement in Atwater's answer, that the debt was $30,000 on the 27th May, 1853. But I think he erred in crediting complainant, in the subsequent account made out by him between the parties, with the unsold lumber in Atwater's hands at that time. The evidence and surrounding circumstances show, pretty clearly, that this lumber must have entered into the adjustment made by the parties of their matters at the time the deed was executed.

Complainant owned a mill and was engaged in the manufacture of lumber. Atwater made advances to him, and received most of the lumber, which he sold and accounted for to complainant. A part was sold by him at Buffalo, where he resided, but the greater part was shipped by him to Albany, where it was sold for him by the persons to whom it was consigned. There was always more or less lumber unsold in the hands of Atwater and his consignees, on rendering his accounts, subject to be thereafter sold and applied by him in liquidation of any balance that might be due to him. Is the $30,000, stated in Atwater's answer, the balance of an account subject to be reduced by the sale of lumber then on hand, or is it

the amount due Atwater after accounting for the lumber on hand, as well as for what had been sold?

The answer fixes a limit to the indebtedness beyond which defendants cannot be permitted to go. It does not fix the amount of the indebtedness as to complainant. That defendants had to prove. The amount proved by them before the commissioner, including the mortgage of $8,200, which we think was improperly excluded by the commissioner, was $46,284.45, instead of $30,000. If the object of the deed was security for the existing debt, with the lumber on hand to be thereafter accounted for when sold and applied in liquidation, why was not $46,284.45, stated as the consideration in the deed, instead of $30,000 ? We confess our inability to answer this question except in one way, and that is, that the value of the lumber on hand must have been estimated by the parties and deduc-ted to reduce the amount to 30,000. This could be done with considerable accuracy by the parties, with the expe-rience of the past to guide them. The amount — just $30,000 — the consideration stated in the deed and sum sworn to in the answer — would seem to indicate an adjustment by the parties of their accounts on some other principle than mathematical certainty, and yet probably sufficiently certain to prevent wrong to either party. But what would seem to be almost conclusive on this point, is, the utter silence of the bill of complaint, which sets up no claim whatever for lumber in Atwater's hands at the date of the deed. It states various subsequent matters which it claims to set off against the debt; as the sale of the Steam Mill Reserve, the sale of logs and other personal property, and the like, but makes no mention whatever of lumber in the hands of Atwater to be sold and applied by him on the debt. We can not account for this silence on any other principle than the one we have stated. We can not presume an item of such mag-nitude was forgotten by complainant, while others of much

less importance were remembered; or that it escaped the attention of both himself and solicitor in framing the bill.

In the two accounts made out by the commissioner — one of all dealings between the parties prior to giving the deed, and the other of dealings between them afterwards — the commissioner has charged defendants with much more lumber than the evidence shows was shipped by complainant to Atwater. The views we have expressed render this immaterial as to the lumber delivered before the deed was given. We mention it here, however, that it may not be said—on fthe supposition that the commissioner's report is correct as to the amount of lumber charged to defendants — that the value of the lumber in Atwater's hands would exceed by several thousand dollars the difference between $30,000 and $46,283.45. From the best data furnished by the evidence we think the two would about balance each other.

Two cargoes of lumber were shipped after the giving of the deed, one to Chicago and the other to Buffalo. The one to Buffalo was shipped by Dorr, from whose testimony it appears that the entire cargo belonged to Atwater, and no part of it to Emerson, it being made up in part of lumber, and some bundles of lath, purchased of Emerson by the bill of sale of the 17th June, 1853. The cargo previously shipped to Chicago it would seem was complainant's lumber, and should be credited to him, but not the cargo shipped by Dorr to Buffalo, for the reasons we have stated.

Exceptions were taken to the commissioner's mode of allowing interest. He allows interest on each item from its date, on both sides of the account, without making rests in the account. Having come to the conclusion that there was a settlement between the parties on the 27th May, 1853, when complainant was found indebted to water in the sum of $30,000 which the deed was intended to secure, we are of opinion that the subsequent

transactions between the parties, from that time to the filing of the bill, were of such a nature — all having reference, on one hand to the extinguishment of the debt, and on the other to advances made to Emerson, or to pay off the prior incumbrances — that the commissioner should have made three annual 'rests, the last of which would have been the 27th day of May, 1856, a few days after the filing of .the bill, allowing interest only on the balance then found due from that time to the making of the report. This, as well as the allowance of interest on each item in both sides of the account, was warranted by the practice of the parties in settling the lumber account between themselves (for there was a prior indebtedness that never entered into these settlements), when the balance was either carried to the new account to draw interest, or was settled by a note given for the amount, payable presently, or at a future day with interest.

It was also objected to the report, that the commissioner did not call on either of the parties to produce books, papers or vouchers, relating to the matters referred to him, and did not examine the parties under oath. If the commissioner erred in either of these particulars to the detriment of defendants, they should have applied to the Court below by motion, for an order requiring the commissioner to do what he should have done. This is the practice where proper testimony is refused on a reference. The error can not be corrected by excepting to the report. Exceptions to the report are proper only where the commissioner has come to an erroneous conclusion of law or fact on the evidence before him, touching the reference:— *Schwarz v. Sears, Wal. Ch.* 19; *Ward v. Jewett, Ibid.* 45; *and see Hoff. Mast. in Ch.* 58, 59.

When this cause was before us heretofore, we expressed no opinion as to the Jennison interest, and so stated at the time. It appeared from the papers then before us, that there was such an interest in the property when

complainant conveyed to Atwater, who afterwards pur-
chased it. But as nothing was said of it on the argument,
we did not take it upon ourselves to decide any question
that might be made in regard to it. It is now insisted
by Green's counsel, as an objection to the commissioner's
report, that the commissioner did not deduct from the
proceeds of lots sold, and with which he charged defend-
ants, an amount equal to the Jennison interest in the
property. The question does not appear to have been
made either before the commissioner or in the Court below.
It would seem to be now raised for the first time. And
it is a sufficient answer to it in the shape in which it comes,
that no exception is taken to the report for the reason
stated in the objection. The 43d exception is: "For that
the commissioner has credited to complainant the sum of
$9,210 37, for amount Atwater has received on sales of
lots and interest thereon to May 5, 1860, whereas he should
have credited a less sum." But this exception is too inde-
finite and uncertain to admit the raising of such an objection
under it. It points to nothing. It is aimless. It finds fault
with the report, without giving any reason for it, except the
common one always given by the vanquished party, viz:
that the decision is wrong and that great injustice has
been done to him. It is necessary, however, that we
should determine it, that this litigation may come to an
end. What the Jennison interest is, does not very clearly
appear. It is stated by counsel to have been an undivided
two-fifty-fifths of the property, exclusive of the mill. On
1st July, 1853, complainant wrote Atwater that he had
just finished platting the property, and that he had sold
a number of the lots, stating the persons to whom sold
and the prices. He then says: "Mr. Jennison, from New
York is here, the person who owns a fractional interest
in this property. I saw him yesterday, and he is to meet
me sure during this week, and agree upon two persons
to make a division. If he will sell at a reasonable

price, and give liberal time, I will try and buy his interest." On 27th August, 1853, Jennison quit claims his interest to Atwater, for $800 — $200 cash, and two notes for $300 each. The notes and cash were sent by Atwater to Jennison's attorney, through complainant. The purchase, under the circumstances, must be deemed to have been made by Atwater for the benefit of the property, and to facilitate the sale and disposition of it to pay the mortgages on it, and the debt to Atwater. Atwater's relations with complainant, and the circumstances under which he acted, were such as not to admit of his purchasing it in his own right. He must however be credited with the $800 he paid for it.

A question was made before the commissioner as to what part of the premises were included in the Steam Mill Reserve sold [to Atwater by complainant. No such question it is said was referred to the commissioner. That is true; but it came before him incidentally, in inquiring, as he was directed to do, what part of the premises remained unsold and not under contract of sale. This inquiry was necessary to enable the Court to shape its decree for a reconveyance by defendants. It involved an inquiry into the extent of the Steam Mill Reserve if there was any question in regard to it, but not otherwise. The commissioner reported as a part of the unsold premises, "blocks Nos. 109, 110, 111 and fractional block No. 112, as shown by a map of the city of Saginaw, dated February 1st, 1837. Said blocks being on the middle ground between the Saginaw river and a bayou, or an arm of the river, by which they are separated from the steam mill and six acres, and the other property." Saginaw city is on the west side of Saginaw river. Why the map of the city was made to extend across the river and include a part of what is now East Saginaw, on the east side of the river, does not appear; while the evidence shows that that part of the map was never acted upon or considered of

any validity whatever. Complainant, in 1853, soon after the deed to Atwater, and after the sale of the mill property to him, caused the property to be platted by one Carleton. Complainant and Atwater were both interested in the making of this plat. It was made under the supervision of complainant, was paid for by Atwater, and was recognized and acted· on for years thereafter by both parties without complaint from either. It must, as a joint act of the parties, be regarded, so far as it goes, as conclusive evidence of what was understood by them to be the mill property. Is the middle ground, then, according to this plat, a part of the mill reserve? We think not. By it the "Steam Mill Reserve" is bounded northerly by Bristol street, easterly by Washington street, and on the south by the south line of the plat, which is also the south line of the property platted. Westerly is the bayou, and beyond the bayou and between it and Saginaw river is the middle ground. The south line of the plat stops at the bayou. It is not extended westerly across the middle ground. There is nothing, in short, on the face of the plat showing an intention to plat the middle ground at that time. By the Saginaw city map, east of the river, the middle ground is platted, but it forms no part of the mill property. We can not, therefore, say that the middle ground is a part of the mill reserve according to either of these plats. And there is no evidence it was ever used in connection with the mill, except the shore, for fastening a boom for logs to be sawed at the mill. This right, with the right to use the whole of the bayou for a boom, we think, from the evidence in the case, passed as an appurtenance to the mill property, but nothing more.

Exception 85. Three' hundred and twenty-five dollars must be deducted from the $1,400 allowed by the commissioner — that being the amount paid by Atwater to

Lyon when the premises were surrendered, less seventy-five dollars rent.

Exception 84 is allowed. The scaling of the Hart logs was before the 17th June, 1853, when they were sold by complainant to Atwater and Durfee.

Exception 58 is also allowed. The $168.34 for sawing 48,055 feet of logs delivered in 1854, must be struck out. This item was, by mistake, credited to complainant in defendant's account, from which it was taken by the commissioner. It should have been a credit for 42,023 feet of logs, instead of for sawing. Complainant is credited with sawing 2,376,906 feet of lumber, all that is claimed by him, without including this item. And defendants must be charged $4.00 instead of $5.56 per thousand for 642,139 feet pine E. logs, delivered at Cass river. They are charged at $4.00 in complainant's account, and a like amount of logs is credited at $4.00 in defendant's account. The two accounts agreeing in quantity and price, we think the commissioner should have credited complainant with them at $4.00 and no more.

As it regards the form of the decree, it should have required the amount due from complainant to be paid to Green instead of Atwater. There is nothing wrong, however, in directing the property to be sold in default of payment. The deed was intended as something more than a mere mortgage to secure what Emerson was owing Atwater. Its purpose was to enable him to sell the property and pay the incumbrances on it, and also the debt due to himself, and the decree, in ordering a sale instead of a foreclosure in default of payment, but carries out the original intention of the parties.

The decree of the Circuit Court is reversed, with costs, and the report of the commissioner is referred back to him, with instructions to make his report conform to the views herein expressed.

CHRISTIANCY J. concurred in this opinion. MARTIN CH. J. concurred in part, but dissented from some of the conclusions. CAMPBELL J. did not sit, having been of counsel.