| 94 | 367 |
|----|-----|
| 103 | 555 |
| 94 | 367 |
| 111 | 159 |
| 94 | 367 |
| 113 | 326 |
| 94 | 367 |
| 115 | 328 |
| 94 | 367 |
| 122 | 114 |
| 94 | 367 |
| 136 | ¹378 |
| 136 | ¹383 |
| 94 | 367 |
| 142 | ¹132 |
| 142 | ¹278 |

## JAY F. FERRIS v. JOHN McQUEEN.

*Fraudulent conveyances—Sufficiency of evidence—Instructions to jury.*

1. Fraud may be proved, like any other fact, by facts and circumstances which satisfy the mind of its existence, and it is a question for the jury when there is any evidence to warrant the finding; citing *Watkins v. Wallace*, 19 Mich. 77; *Freedman v. Campfield*, 92 Id. 118.

2. A chattel mortgage given for $340 more than the amount actually owing to the mortgagee, for the purpose of delaying and defrauding the other creditors of the mortgagor, is void; but the question whether or not it was so given is one for the jury, when fairly submitted for their consideration.

3. A creditor has a right to extend further credit to a debtor, even though he is largely indebted to the creditor and to others at the time, and he has the right to secure his debt by a mortgage on the debtor's stock in trade in preference to other creditors; but he cannot enter into a fraudulent scheme to hold the debtor out as deserving of credit, and thus enable him to purchase goods of other creditors, for the very purpose of taking security upon them, knowing that they are not paid for.

Error to Kent. (Adsit, J.) Argued November 18, 1892. Decided December 23, 1892.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion.

*C. O. Smedley· (Blair, Kingsley & Kleinhans* and *Peter Doran,* of counsel), for appellant.

*Drury & Wolcott,* for plaintiff:

1. Counsel cited, in support of the charge as to the amount of proof required to establish fraud, *Whitfield v. Stiles*, 57 Mich. 410; *Henneberger v. Matter*, 88 Id. 407.

LONG, J. Action of trover for the value of a stock of

goods which defendant, as sheriff, held under certain writs of attachment, issued against one Benjamin A. Fish. Plaintiff claimed under a lien by chattel mortgage. Cause tried by jury. Verdict and judgment for plaintiff. Defendant brings error.

The assignments of error all relate to the refusal to give certain requests to charge, and to the charge as given. The court was asked to charge the jury:

" Where fraud is charged, express proof is not required. It may be inferred from circumstances. And if the jury find from the evidence that Fish started in the grocery business without much capital in comparison with the business he was doing or intended to do; that he was constantly running behind, and unable to meet his debts as they matured; and that in the spring of 1890 he was insolvent, and while in that condition devised the scheme of extending his business by adding to his stock dry goods, boots and shoes, and other articles of merchandise; and if you further find from the evidence that he had no means of purchasing such additional ·stock, except on credit, and that at the time he devised this scheme he was insolvent, and that he knew he would probably be unable to pay for this additional stock, and that, in pursuance of this plan, Fish added dry goods, boots and shoes, and other articles of merchandise to his former grocery stock, which additions were very considerable in comparison with the amount of the stock which he had previously been carrying, and that such additional stock was obtained on credit from merchants who did not know of his insolvent condition, and that such additional stock remained substantially unpaid for until after the beginning of this suit, and that the indebtedness for the same has only been paid for, if at all, by the execution sales proved in this case,—I charge you that this would be fraud in law on the part of Fish, as against the unpaid creditors from whom he made such purchases.

" And if you further find from the evidence that Ferris knew all these facts and circumstances, and assisted and advised Fish in carrying out this plan, at the same time having a secret understanding with him, which was unknown to the other creditors, that, in case he was pressed by his other creditors, he (Fish) would secure Ferris what he was owing to him in preference to his other creditors; and if

you further find from the evidence that, in pursuance of this secret understanding, Fish did give Ferris a mortgage on substantially all his property, and that the mortgage in this case was for a larger amount than was actually owing to him, and at a time when Ferris had good reason to believe that Fish was insolvent, and was indebted to other creditors,—you may take into consideration these things in determining whether the mortgage was given fraudulently or not, and if the jury find from the evidence in the case that these claims, as made by the defendant, actually existed as facts, then I charge you as a matter of law that such acts would amount to fraud, and the mortgage would be void as against the subsequent attaching creditors, who are represented by the defendant in this case."

These requests were refused, but were fully covered, so far as applicable to the case and proper, by the general charge.

It appears that the plaintiff is a wholesale and retail dealer in teas, coffees, groceries, etc., at Grand Rapids. Fish was a retail dealer in Cedar Springs, and commenced buying goods of plaintiff in February, 1889, getting a line of credit. In April, 1890, he was indebted to the plaintiff in the sum of nearly $4,000, and was slow in making his payments. Up to that time he had not been carrying dry goods. He came to the plaintiff, and told him that the people he got his trade from, the Patrons of Industry, wanted him to increase his line of goods by adding dry goods, and he thought by doing so his trade would be increased. He obtained further credit from the plaintiff, until in June, 1891, his indebtedness to him amounted to $6,644. Mr. Ferris called upon him for security, and took a chattel mortgage for $7,000 on June 3, 1891, which was filed on the same date. The writs of attachment were levied on the store two days later. It was shown upon the trial that the mortgage was for $340 more than the actual indebtedness to plaintiff. The plaintiff claimed, however, that this was done by mistake in overlooking an

indorsement of that amount on one of the notes which plaintiff held. Some testimony was given tending to show this fact.

The fraud claimed in the case was in giving this chattel mortgage for more than the amount actually due, and also in that the plaintiff extended credit from time to time to Fish when he knew Fish was in failing circumstances; that the plaintiff was in the position of a *confidential creditor* with him, knowing his indebtedness, and expecting to be protected, though he knew Fish could not meet his bills; and that he thus enabled him to get credit from others who had no knowledge of his indebtedness to the plaintiff. It is also claimed that there was an agreement between the plaintiff and Fish during this time that the "plaintiff should not be let down a cent." This claim was founded upon the testimony of the plaintiff. He was asked.

"Now, do you mean to say you allowed his line of credit to jump up over $2,000 or $2,500, to $7,000, just to enable him to buy a branch store in Rockford that was worth only $500?

"*A.* Oh, no. I don't mean to say that. I had this confidence in Mr. Fish until it was otherwise shaken,—for he had not made his business successful as he promised me to do,—that, if he found his business was not successful, he would reduce his stock, reduce his account, and not let me down any more than possible; that is, not possible, but use—I did not expect to get let down a cent; but, if things went against him, and he could not make it profitable, he was to close out the business in an honorable way, and refund the money."

It was not shown, however, that any *agreement* was entered into between them "not to let the plaintiff down," and Fish testified that no such agreement was made, and that nothing was done to secure the plaintiff his debt until the chattel mortgage was given. The court submitted these questions to the jury, but defendant claims that the court was in error in certain portions of his charge. The charge

was, in the main, a very fair one. The jury were instructed that, the mortgage being taken for more than the amount of the actual indebtedness, it was a badge of fraud, and unless they found the amount so inserted was by mistake, and with no intent to defraud, that of itself would avoid the mortgage. This was correct.

In speaking of the other claims of fraud made by counsel for defendant, the court stated to the jury:

"Fraud must be proved, and must not be inferred from slight circumstances. Fraud may be proved, however, by circumstantial evidence as well as positive proof. Where fraud is charged, express proof is not required. It may be inferred from strong presumptive circumstances. Fraud will not be presumed upon slight circumstances or mere suspicion, but the circumstances must be such as to amount to clear proof before a party can be held liable for fraud, and it must be consistent with the acts of fraud charged, and inconsistent with honesty and good faith."

It is claimed that this was error; that it was misleading to the jury; that the court was in error in stating that "fraud must be proved, and must not be inferred from slight circumstances;" and, again, in saying that "it may be inferred from strong presumptive circumstances."

In *O'Donnell v. Segar*, 25 Mich. 378, it appears that the jury were told by the trial court that "they could not infer fraud, and that it could not rest upon implication." It was said by this Court:

"We know of no such rule of evidence in reference to the question of fraud. It is, like any other fact, to be proved by any facts and circumstances which satisfy the mind of its existence, and may be, and generally is (when found), inferred from circumstances, and cannot often be proved in any other way."

The court in the present case, however, told the jury that fraud could "be proved by circumstantial evidence as well as positive proof;" and yet a limitation was placed upon this by adding that these facts and circumstances

must not be slight, and the inference could only be drawn from strong presumptive circumstances, which must amount to clear proof. The rule is that fraud may be proved, like any other fact, by facts and circumstances which satisfy the mind of its existence, and it is a question for the jury when there is any evidence to warrant the finding. As was held in *Freedman v. Campfield,* 92 Mich. 118, when there is a *scintilla* of evidence the verdict will not be disturbed. We think the court was not justified in the use of this language, and that the rule laid down is not upheld by the cases.

In *Watkins v. Wallace,* 19 Mich. 77, Mr. Justice CAMPBELL, speaking of the charge in that case, says:

" We think, however, that in charging the jury concerning the proof of fraud, the language used had a tendency to mislead the jury into a belief that more stringent proof was necessary than the law requires. The judge charged them that ' fraud will not be presumed from slight circumstances; the proof must be clear and conclusive.' "

This was held error, and the case reversed. It is a little difficult to see any distinction between such a charge and the one given here. The court did not say that the proof must be conclusive, but did say that it must be clear, and, in effect, that it could not be inferred except from strong presumptive circumstances. As in *Watkins v. Wallace, supra,* it may be said that—

" It might have misled the jury as to the amount and quality of proof required. No such rigid rule prevails in any civil case. Common sense teaches every one to be cautious in arriving at conclusions which are prejudicial to character and honesty; but, if the testimony produces a rational belief, a civil jury cannot be required to discard it because it is not conclusively established."

We think the court was in error in this part of the charge.

If the mortgage was made larger than the amount actu-

ally owing by the sum of $340, and this excess was put in for the purpose of delaying and defrauding the other creditors, it was void; but this was a question for the jury, when fairly submitted for their consideration.

It cannot be said, however, that the court was in error in refusing the requests to charge above set forth. They contained many things which would have been improper, and the general charge covered all that it was proper to give. Plaintiff had the right to extend credit to Fish, even though Fish was largely indebted to him and others at the time, and he had the right to secure his debt by this mortgage in preference to other creditors. It was not a badge of fraud to do so. It is true that he would have no right to enter into a fraudulent scheme to hold Fish out as deserving credit, and thus enable him to get the goods of other creditors, for the very purpose of taking security upon them, knowing that they were not paid for. But this is not shown.

We find no other errors in the record, but for the error in the charge which we have pointed out the verdict and judgment will be reversed, with costs, and a new trial granted.

McGRATH, C. J., DURAND and MONTGOMERY, JJ., concurred with LONG, J.

GRANT, J. I think the charge was correct.