ARNOLD *v.* HARRIS.

1. EVIDENCE—OPINIONS.

In an action by an assignee in bankruptcy to recover property alleged to have been transferred by the bankrupt in fraud of creditors, a sheriff, who testifies. that he levied executions against the bankrupt at the time of his failure, and that he could find no property other than that on which he levied, should not be permitted to state that he became satisfied that the bankrupt had no other property and that he decided he had none.

2. SAME—VALUE OF PROPERTY—RELEVANCY.

In an action by an assignee in bankruptcy to recover the value of certain mining stock alleged to have been fraudulently transferred by the bankrupt, in which the value of the stock and the dividends are shown, evidence as to the reputation and standing of this and other mines in the vicinity is immaterial.

3. FRAUDULENT CONVEYANCES—EVIDENCE.

In an action to recover money transferred by defendant to one of his sons in fraud of creditors, evidence that the son was a first-class business man is irrelevant.

ADDITIONAL OPINION.

COSTS—APPEAL—RECORD.

Where a record on error is unnecessarily prolix appellant will be allowed only a fair proportion of its cost on reversal.

Error to Wayne; Donovan, J.  Submitted October 17, 1905.  (Docket No. 14.)  Decided. December 15, 1905. Additional opinion January 3, 1906.

Assumpsit by Lewis M. Arnold, trustee in bankruptcy of Morris Harris, against Saul Harris, Benjamin Harris, Joseph Zechman, and George Clark, copartners as Harris Bros. & Co., and the National Mortgage Loan Company, for money had and received.  There was judgment for defendants, and plaintiff brings error.  Reversed.

Plaintiff, as assignee in bankruptcy of Morris Harris, brought this suit to recover assets claimed to be in the possession of defendants and belonging to the bankrupt. Two of the defendants are Morris' sons, one Zechman, a son-in-law, and the other defendant, Clark, was associated in business with them. It is claimed that they were partners, associated together under the name of Harris Bros. & Co. and the National Mortgage Loan Company. The precise claim is that the defendants fraudulently received money or property of the bankrupt which is invested in their business.

The declaration contains four counts. The first is based upon the conversion by Morris of a large amount of his property into money, to wit, $35,000, which he concealed from his creditors and thereafter placed the same in the hands of the defendants and caused the same to be invested in the defendants' business, with the intent to cheat, hinder, delay, and defraud his creditors, which defendants knew. The second charges the conversion of a large part of his stock of goods into money, which he concealed from his creditors with fraudulent intent, and which he caused to be invested in the name of his son Saul Harris, one of the defendants, in a zinc mine, known as the "Morning Star Mine." And from this mine there was realized, to wit, $35,000, which money was invested in the defendants' business; they having knowledge thereof. The third count alleges the conversion by Morris Harris of a large portion of his stock into money, which he invested in the name of his wife, Sarah Harris, and his son Saul Harris, to keep the same from his creditors, which sums of money and the proceeds have been disposed of and turned over by Morris Harris to the defendants and used by them in their business; they knowing that it was conveyed to them in fraud. The fourth count alleges that the defendants had become possessed of property of the value of, to wit, $35,000, through the fraudulent claim that the property was their own, which rightfully belonged to the trustee in bankruptcy; and

that they refused to turn the same over, and for which injury an action upon the case for fraud might have been brought.

Plaintiff gave evidence tending to support his claim, and defendants gave evidence tending to show that they had received no property from the bankrupt. The case was submitted to the jury, who found a verdict for the defendants.

*Bernard B. Selling*, for appellant.

*Sloman & Sloman* for appellees.

GRANT, J. (*after stating the facts*). 1. The case must be reversed for several errors committed by the trial judge. Morris Harris was a merchant in 1896 in Kansas. He failed. Several attachments were placed in the hands of the sheriff for service. The sheriff testified that he levied upon all the property that he could find. The claim of the defendants was that the sheriff then seized all the assets of Mr. Harris. The sheriff was a witness and was permitted to testify under objection and exception that he became satisfied that Mr. Harris had no property upon which he could levy, aside from that on which he had levied, and that he decided that he had none. This was clearly incompetent. This was not a case for expert testimony or opinions as to what the bankrupt had or did not have. It was competent to place before the jury the efforts which the sheriff made by virtue of his writs to find property, and what he found and levied upon. It virtually allowed him to give his opinion that the defendants had no mining stocks or other property in their possession belonging to the bankrupt, as the plaintiff claimed.

2. The court erroneously permitted the following question:

"Do you know what the record and the standing of the various mines of the Oronogo district are, as to which are considered paying and good mines? and What rank the Morning Star Mine held among the zinc mines in operation in that district?"

It was claimed that a false statement had been made by one of the defendants as to the amounts received from that mine, and it was claimed that this mining stock was actually the property of the bankrupt. The actual dividends and value of the stock were shown. The reputation or standing of this or other mines was wholly immaterial.

3. A witness was permitted to testify under objection and exception that defendant Saul was, in his judgment, "a first-class business man for a young man of his age." The testimony had no bearing upon the issue. The questions were: Did he have money ? and Where did he get it ? The fact that he was a shrewd business man had no tendency to prove that he got none from his father.

4. The court erred in instructing the jury as to the proof required in cases of fraud. It is unnecessary to state the erroneous instructions. They are substantially the same as those found in *Ferris* v. *McQueen*, 94 Mich. 367; *Gumberg* v. *Treusch*, 103 Mich. 555; *McNaughton* v. *Smith*, 136 Mich. 368, and other cases; and this case is ruled by those.

Judgment reversed, and new trial ordered.

MCALVAY, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.

### ADDITIONAL OPINION.

PER CURIAM. In writing the above opinion we inadvertently overlooked the claim of the defendants that, if the judgment should be reversed, the record being unnecessarily prolix, they should not be charged with the entire costs of printing the record. We think this claim well founded, and we therefore hold that the appellant will recover only one-half the costs of printing the record.