RHOADES v BARCAL

1. EQUITY—APPEAL AND ERROR—FINDINGS OF FACT—DE NOVO REVIEW
    —COURT RULES.

    The Court of Appeals reviews chancery cases *de novo* on the
    record on appeal and principal regard is given to the special
    opportunity of the trial court to judge the credibility of wit-
    nesses; the trial court's findings of fact will not be set aside
    unless clearly erroneous or unless the court concludes that it
    would have reached a different result had it been in the
    position of the trial judge (GCR 1963, 517).

2. EQUITY—FINDINGS OF FACT—SUFFICIENT EVIDENCE—FURTHER FIND-
    INGS—QUANTUM MERUIT—QUASI-CONTRACT—APPEAL AND ER-
    ROR.

    A decision of a trial court that a partnership relationship did not
    exist between plaintiffs and defendants is affirmed on appeal
    where it is supported by sufficient evidence on the record; but
    the court's determination that the plaintiff-wife received ade-
    quate compensation for the occasional duties she performed is
    not affirmed where this bare assertion by the court is unaccom-
    panied by any specific determinations of the extent of her
    labors, and further determinations of whether her labors could
    be adequately quantified, evaluated and remunerated under a
    theory of *quantum meruit* or quasi-contract of employment are
    necessary for proper review.

Appeal from Van Buren, David Anderson, Jr., J.
Submitted October 8, 1975, at Grand Rapids.
(Docket No. 21977.) Decided October 28, 1975.

Complaint by Deo Rhoades and Betty Rhoades
against Howard S. Barcal, Jr., and Frances A.
Barcal, individually and doing business as Melody
Lanes, and against Barcal's Red Carpet, Inc., and

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur 2d, Equity §§ 266, 267.
[2] 30 Am Jur 2d, Evidence §§ 1080–1090.

Myrtle Barcal for damages for breach of a partnership agreement and for additional compensation for labor performed. Judgment for defendants. Plaintiffs appeal. Affirmed in part, but remanded for further hearing as to compensation for plaintiff Betty Rhoades.

*James, Dark & Craig* for plaintiffs.

*Globensky, Gleiss, Henderson & Bittner* for defendants.

Before: N. J. KAUFMAN, P. J., and R. B. BURNS and DENEWETH,* JJ.

R. B. BURNS, J. Plaintiffs appeal the decision of the trial judge that the relationship between plaintiffs and defendants did not constitute a partnership, and that plaintiffs are not entitled to additional compensation for their labors on behalf of defendants' Melody Lanes, a bowling and dining facility in South Haven, Michigan.

This is an unfortunate and difficult case, with many disputed questions of fact. Those that are not disputed are as follows.

In early 1967 Deo Rhoades was operating a gas station in South Haven. His business was about to end because the state had condemned the property. Mr. Rhoades was interested in finding a new occupation. It also appears that at that time Howard Barcal was interested in finding someone to manage the bowling alley (which includes a snack bar, liquor bar, and attached restaurant/cocktail lounge, the "Red Carpet") of which he was the owner. Mr. Barcal needed extra cash to invest in Melody Lanes. With this in mind, Barcal and Rhoades discussed the formation of a partnership.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Deo Rhoades did not have any funds immediately available in April, 1967, when he began working at Melody Lanes. Nor was there a written agreement. However, at the end of May, 1967, Rhoades tendered a check for $5,000 to Barcal and a written agreement was then signed on June 29, 1967. This inelegantly drafted agreement contains a "Partnership Purchase Plan", which indicates that Deo Rhoades could "elect" in an unspecified manner to accumulate "volume increase credits", a portion of the increased profits of the business, towards payment of his recited capital share of $150,000. This document, as drawn by Howard Barcal, does not purport to set up an existing partnership.

Plaintiffs and defendants worked together for 5-1/2 years until November, 1972. Plaintiffs had tendered an additional $5,000 to Howard Barcal by two checks written in August and September of 1970. One day in November, 1972, Howard Barcal came up to Deo Rhoades in the bowling alley and indicated that they no longer agreed on the management of the business and that Rhoades would be terminated at the end of the year.

In January, 1973, plaintiffs commenced this action for a dissolution of the partnership and for an accounting or for additional compensation for services rendered. The trial revealed extensive evidence in support of both plaintiffs' and defendants' versions, and the judge found for defendants on both claims.

Much circumstantial evidence indicated the nonexistence of a partnership. The liquor license of the establishment was in Howard Barcal's name, and was never changed to include Deo Rhoades. In 1969, the Barcals signed a land contract to purchase the real estate on which the bowling alley is

located. Although plaintiffs witnessed this document, they did not have and do not claim an interest in the real estate. No partnership papers or partnership income tax returns were filed, and there are no other government documents that would indicate that the business was run as a partnership. A Van Buren County enforcement officer for the Michigan Liquor Control Commission had interviewed both Barcal and Rhoades and testified that, as far as he could determine, Rhoades had no interest in the establishment. Similar testimony was offered by an independent land developer.

Plaintiff's circumstantial case is also attractive. Numerous employees of the business testified that the Rhoades were looked upon as part owners in the business, both from the standpoint of the nature of their work and by direct statements of Howard Barcal to the effect that Deo Rhoades was his partner. The yellow pages advertisement for the business contained the names Deo and Betty Rhoades and Bud and Fran Barcal. Deo Rhoades worked very long hours, often upwards of 100 hours per week, and involved himself in virtually all phases of the business. He appeared to have full managerial authority. The Rhoades' investment of $10,000 and a pickup truck can be seen as a capital contribution. Betty Rhoades signed the paychecks for the business. Further, the 1967 agreement contains numerous indications of something other than an employer-employee relationship, *e.g.*, the last paragraph: "The spirit of this agreement is to enable the parties involved to * * * build assets over a period of years for themselves and their estates * * * ."

The trial judge, sitting in equity, found "that no partnership ever existed between plaintiffs and

defendants", and that Deo Rhoades never exercised his "option to purchase an interest". Plaintiffs' cash advances were viewed as a loan, and ordered repaid with accumulated interest per the 1967 agreement. The requested accounting was denied.

While we cannot be wholly satisfied with this relatively mechanical disposition, we must approach this appeal with self-restraint. Our duty is to review the record *de novo*. *In re Hartman Estate*, 51 Mich App 192; 215 NW2d 202 (1974), *Cerling v Hedstrom*, 51 Mich App 338; 214 NW2d 904 (1974). However, "[w]hether an action is in law or equity, principle *[sic]* regard must be given to the special opportunity of the trial court to judge the credibility of witnesses, and findings of fact will not be set aside unless clearly erroneous. GCR 1963, 517". *Kurrle v Walker*, 56 Mich App 406, 409–410; 224 NW2d 99, 101 (1974). It is also said:

"We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge." *Christine Building Co v City of Troy*, 367 Mich 508, 518; 116 NW2d 816, 820 (1962).

We cannot classify this difficult decision as to the absence of a partnership as "clearly erroneous". Defendants' theory of the relationship is supported by sufficient evidence. This holding is affirmed.

We turn to plaintiffs' request for extra compensation for their labor. Deo Rhoades worked extremely long hours for a salary of $100 per week, which was gradually increased over the 5-1/2 years to $150. Howard Barcal testified that Rhoades' predecessor was paid $100 per week, and

that the person hired to replace him was paid $125 per week. Deo Rhoades testified that at the date of trial he was making approximately $168 per week in another bowling alley job with significantly reduced hours and responsibilities. There can be little doubt that Deo Rhoades could reasonably believe that he was taking a limited present income while building equity in the business. Again, however, we cannot say with any certainty that the finding of the trial court is clearly erroneous. We affirm as to the compensation paid to Deo Rhoades.

The trial court also held "that plaintiff Betty Rhoades received adequate compensation for the occasional duties she performed". The evidence indicates, however, that Betty Rhoades' work for the business was more continuous than "occasional". She made out the payroll for at least a year and a half. She assisted in the operation of the restaurant for roughly a year. She worked regular hours in the restaurant for approximately another year and a half. She assisted in the snack bar and the kitchen as needed. Her only compensation for these various tasks was receipt of a car that defendant Howard Barcal valued at $1,000. On one other occasion she received $150.

Betty Rhoades did not testify as to why she worked for no pay. Her behaviour is most explainable under the rationale, as cited in plaintiffs' brief, that she considered this a family business.

The trial judge recognized the merit of her claim for some compensation by making a substantive ruling thereupon; he found "as a fact" that she received "adequate compensation". This bare assertion is unencumbered by any specific determination of the extent of her labor. This finding is not as presumptively valid as is the holding as to

Deo Rhoades. Deo Rhoades was paid a regular salary that might be construed as representing reasonable compensation. Betty Rhoades was not. We therefore remand for the trial court's determination as to whether Betty Rhoades' labor can be adequately quantified, evaluated, and remunerated under a theory of *quantum meruit* or quasi-contract of employment. See, *e.g., Cascaden v Magryta,* 247 Mich 267; 225 NW 511 (1929), *Moll v Wayne County,* 332 Mich 274; 50 NW2d 881 (1952).

Remanded for proceedings consistent with this opinion.