GRANT v VAN REKEN

1. MORTGAGES—EQUITABLE MORTGAGE—DEEDS—EQUITY.

    A court of equity can declare a deed absolute on its face to be a mortgage.

2. EQUITY—APPEAL AND ERROR—CLEAR ERROR.

    Review in matters of equity is *de novo;* however, the findings of the trial judge are generally upheld unless the Court of Appeals is convinced that it would have reached another result had it occupied the position of the trial court, *i.e.,* if the trial court findings were clearly erroneous.

3. MORTGAGES—EQUITABLE MORTGAGE—DEEDS—BURDEN OF PROOF.

    One who asserts that an absolute conveyance is a mortgage bears a heavy burden of proof and he must furnish a preponderance of evidence whereby it is made very clear to the fact-finder that the parties did not contemplate an absolute sale.

4. MORTGAGES—EQUITABLE MORTGAGES—DEEDS—EQUITY—CONSIDERATIONS.

    A court of equity when determining whether a deed absolute on its face is a mortgage looks to (1) the pecuniary embarrassment of the grantor, (2) his indebtedness to the grantee, and (3) the inadequacy of consideration.

5. USURY—INTEREST—FEES—COLLECTION CHARGES—ATTORNEY FEES—STATUTES.

    Any lender who enters into a contract or agreement which does not comply with certain statutory interest provisions or who charges interest in excess of that allowed by statute is barred from the recovery of any interest, official fees, delinquency or collection charges, attorney fees, or court costs; and, the borrower shall be entitled to recover his attorney fees and court costs from the lender (MCLA 438.32; MSA 19.15[2]).

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 55 Am Jur 2d, Mortgages §§ 11, 12.

[2] 27 Am Jur 2d, Equity §§ 226, 267.

   Nature and effect of jury's verdict in equity. 156 ALR 1147.

[5] 45 Am Jur 2d, Interest and Usury § 4 *et seq.*

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted May 10, 1976, at Detroit. (Docket No. 24238.) Decided September 7, 1976.

Complaint by William U. Grant and Betty K. Grant against Stanley R. Van Reken and Harriet E. Van Reken for a declaration that a warranty deed is an equitable mortgage. Judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Devine, Kent & Devine,* for plaintiffs.

*William A. O'Brien, Jr.,* for defendants.

Before: R. M. Maher, P. J., and M. J. Kelly and D. C. Riley, JJ.

M. J. Kelly, J. Plaintiffs brought an action in Wayne County Circuit Court to have a warranty deed from plaintiffs to defendants declared a mortgage. Following a non-jury trial, held on March 20 and 24, 1975, judgment was entered for defendants. Plaintiffs appeal as of right.

At trial, defendants agreed that plaintiffs purchased a residence at 179 South Venoy Circle, Garden City, Michigan, for $14,755 on April 18, 1956, and financed this purchase by a loan from Citizens Mortgage Company. Later, a second mortgage was placed against the property with Griswold Mortgage Company. Thereafter, both mortgages were foreclosed. A sale had been had in the Griswold Mortgage foreclosure proceedings and was imminent in the Citizens Mortgage foreclosure proceedings. The balance owing to Citizens was $10,665.93, and the balance owing to Griswold Mortgage was $706.42. It was agreed below that

the market value of the premises on or about September 25, 1970 was $25,000.

It is not clear whether the plaintiffs contacted the defendants or the defendants contacted the plaintiffs to arrange for some refinancing agreement that would save the home for the plaintiffs. In any event, the defendant, Stanley R. Van Reken, did meet with the plaintiffs on or about September 25, 1970 and discussed a refinancing arrangement. A few days later, plaintiffs executed three documents, a warranty deed, a lease with option to repurchase and an agreement. The import of these documents is that the plaintiffs conveyed to the defendants their home for $12,000 and received in return a two-year lease requiring rentals at the rate of $169 per month, giving them an option to repurchase at any time during the term of the lease for a price of $14,846.57.

Defendants' investment consisted solely of paying the delinquency on the Citizens mortgage, in the amount of $1,627.03, and paying off the Griswold mortgage, in the amount of $706.42, constituting a total payment by defendants of $2,333.45. The plaintiffs received no cash directly from the defendants.

Plaintiff William Grant testified that at the time of the foreclosure he sought to obtain a loan but was unable to do so. He had tried to sell the home and had contacted a realtor. However, due to pressure from his wife he sought an alternative to selling it. Grant stated that he met with the defendant, who told him, "You don't have to lose your house, I save a lot of houses. Let me help you." When asked why he signed the various documents he replied, "I would have signed anything to save my house." Furthermore, when asked what papers he had signed to facilitate this

transaction he stated, "What I thought I signed was something that I thought he'd take care of my bills and in two years I'd get my house back. The only difference would be a land contract."

Plaintiff admitted that he was never able to come up with the $2,000 down payment required by the option to repurchase, in order to exercise it. He also stated that he made the monthly rental payment to defendant and over the two-year period there had been a few occasions when the payment was not made on time. He stated that when the payment was late he received a notice from Citizens Mortgage Company that the payment had not been made.

Defendant Stanley Van Reken testified that plaintiffs had called him in response to a letter he had sent them because their home was in foreclosure and, "They wanted to find some way of staying in the home and continuing to live there." Defendant stated that at no time did he intend to make a loan to plaintiffs and that he was not in the business of loaning money. He stated that he was in the business of buying and renting out property. He stated that he entered into this transaction with the plaintiffs because they "appealed for help". On cross-examination, defendant stated that at the time of this transaction he employed a regular letter which he sent out to people whose homes were in foreclosure. He stated that in the past ten years he had acquired at least 100 homes in this fashion.

At the close of evidence, the court reviewed the testimony and stated:

"The plaintiff, William Grant, testified completely without any detail in his description of events and the nature of the transaction which he entered into with the Defendant. He said that he would have done any-

thing to save the house * * * . This is hardly testimony establishing a loan between the parties and compared with Defendant's evidence as to the details of the transaction, it certainly does not sustain the test of preponderance of evidence which is the Plaintiff's burden."

The court therefore concluded that it could not declare the deed an equitable mortgage.

It is well settled that a court of equity can declare a deed absolute on its face to be a mortgage. *Taines v Munson,* 19 Mich App 29; 172 NW2d 217 (1969), *Ferd L Alpert Industries, Inc v Oakland Metal Stamping Co,* 379 Mich 272; 150 NW2d 765 (1967), *Emerson v Atwater,* 7 Mich 12 (1859). Review in matters of equity is made *de novo.* Consideration is given to the findings of the trial judge who is generally not reversed or modified unless this Court is convinced that it would have reached another result had it occupied the position of the trial court, *i.e.,* if the trial court findings are clearly erroneous. *Wells v Wells,* 330 Mich 448; 47 NW2d 687 (1951), *Opal Lake Association v Michaywé Limited Partnership,* 63 Mich App 161; 234 NW2d 437 (1975), *Rhoades v Barcal,* 65 Mich App 315; 237 NW2d 306 (1975).

The trial court held that plaintiffs had not sustained the test of preponderance of evidence, which was their burden. Although it has been said that a preponderance of the evidence is sufficient, *Ferris v McQueen,* 94 Mich 367; 54 NW 164 (1892), other tests have been set forth by the appellate courts, indicating that a higher degree of proof than this may be required in such an issue.

In its most recent statement on the burden of proof on this issue, the Supreme Court, in *Ferd L Alpert Industries, Inc v Oakland Metal Stamping Co, supra,* 379 Mich at 276, said merely: "For

citation and discussion of authority imposing a heavy burden of proof upon one who invokes this equitable doctrine, see *Schmidt v Barclay* * * * [161 Mich 1; 125 NW 729 (1910)]." In that case the Court reviewed the several different standards enunciated in the cases to that date and rejected the defendant's statement that the burden was "beyond a reasonable doubt" and concluded the case before it by stating that it was "very clear" that the parties did not contemplate an absolute sale. Thus the one who asserts that an absolute conveyance is a mortgage bears a heavy burden of proof and he who invokes this equitable doctrine must furnish a preponderance of evidence whereby it is made "very clear" to the fact finder that the parties did not contemplate an absolute sale.

Even though this is a heavy burden of proof, we believe that the plaintiff has met it and we hold that the trial judge erred in refusing to declare the deed an equitable mortgage.

In *Taines v Munson,* 19 Mich App 29; 172 NW2d 217 (1969), Taines conveyed to defendant his land contract vendee's interest as well as a quit-claim deed of his undivided one-half interest in a 76-acre parcel. An option to repurchase running to Taines was prepared but retained by defendant's attorney. This Court stated that, given clear and convincing proof, there was no question that it, as a court of equity, could declare a deed absolute on its face to be a mortgage. Quoting *Emerson v Atwater,* 12 Mich 314, 317 (1864), the Court said:

" 'In such cases the pecuniary embarrassment of the grantor, his indebtedness to the grantee, and inadequacy of consideration are circumstances the court looks to in determining the true character of the instrument. * * * And of the three, inadequacy of consideration is the most important.' " 19 Mich App at 36.

In the instant case, it is not in dispute that plaintiffs were in financial straits. Both mortgages on their home were in the process of foreclosure. Their home, valued at $25,000, was conveyed to defendants, with a stated consideration of $12,000. However, the agreement entered into between the parties on the same date stated that the consideration for the deed was the expenditure by defendants of the monies necessary to redeem or reinstate the two mortgages. At that time approximately $12,000 would have been required to pay off both mortgages. However, defendant was able to reinstate the first mortgage by a payment of approximately $1,600 and completely pay off the second mortgage of approximately $700. Therefore, in exchange for a cash outlay of approximately $2,300 defendant obtained a deed to property worth $25,000, encumbered by approximately $9,-000. The inadequacy is blatant.

Although plaintiffs' evidence could have been more forceful, it is clear from a reading of the transcript that it was not their intent to sell the home. They, when faced with foreclosure proceedings, contacted a realtor but were desirous of finding another avenue to "save" their home. They signed documents, without the assistance of counsel, which were prepared by defendant. Defendant paid nothing to the plaintiffs and paid approximately $2,300 to the two mortgage companies. We have given great weight to this inadequacy of consideration and the fact that plaintiffs were financially embarrassed, in determining that this deed, absolute in form, was a mortgage. See *Ellis v Wayne Real Estate Co,* 357 Mich 115, 118; 97 NW2d 758 (1959). See also *Sheets v Huben,* 354 Mich 536, 540–541; 93 NW2d 168 (1958), where it was said: "While inadequacy of consideration is

not an infallible test, it is an indication that the parties did not consider the conveyance to be absolute, * * * particularly where the bargaining positions of the parties are markedly unequal." See also *Taines v Munson, supra.*

The issue of usury has been raised on appeal by the plaintiffs although not in the trial court for the reason that the trial court rejected plaintiffs' contention that the deed and option were, in fact, a mortgage. Because we agree that the instruments in the present case should be construed to be a mortgage, *Cullins v Magic Mortgage, Inc,* 23 Mich App 251; 178 NW2d 532 (1970), is applicable. There an equitable mortgage was imposed and, although the transaction between the plaintiffs and defendants did not take the form of a loan, the law of usury was applied.

In this case the defendants paid a total of $2,333.45 and assumed a mortgage of $9,982.05 for a total of $12,315.50. However, an escrow balance of $802.89 should be credited to plaintiffs, for a total of $11,512.61 loaned. Two years later, in order to repurchase the home, plaintiffs would be required to pay $14,846.57. This is a built-in bonus, or interest, of $3,333.84. It should also be noted that the lease and option agreement provide for the repurchase of the home at the price of $14,846.57 on the following terms: $2,000 down, balance due on a land contract at the rate of $185 per month at the highest interest rate permitted by Michigan law. Thus the balance of $12,846.57 will also be subject to interest, this time at a rate possibly as high as 11%. MCLA 438.31c; MSA 19.15(1c).

In contrast, at the time of this transaction, the defendants were entitled to no more than five percent interest. MCLA 438.31; MSA 19.15(1).

MCLA 438.32; MSA 19.15(2) provides that any lender who enters into a contract or agreement which does not comply with the interest provision or who charges interest in excess of that allowed by the act is barred from the recovery of any interest, official fees, delinquency or collection charges, attorney fees, court costs, and that the borrower shall be entitled to recover his attorney fees and court costs from the lender.

Therefore, we remand this cause to the trial court for a determination of the actual balance due under the mortgage. Costs to appellants.