MUIRHEAD *v.* FREIMANN.

1. VENDOR AND PURCHASER—LAND CONTRACT—OPTIONS.

   Land contract and supplemental agreement with reference to brewery property *held*, to create an offer to sell upon conditions stated in contract upon part of land owners, although word ''option'' as used in latter agreement in referring to contract is not controlling.

2. SAME—OPTION DISTINGUISHED FROM LAND CONTRACT.

   Distinction between an option and a land contract is that in the latter the seller is obligated to sell and the purchaser to buy; both parties being bound.

3. SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY.

   Where specific performance of written instruments could not be enforced by defendants against one seeking such remedy, he is without such remedy as against them.

4. VENDOR AND PURCHASER—RIDER AS TO IMPROVEMENTS—LAND CONTRACT.

   Rider, attached to land contract and supplemental agreement which converted contract into an option, *held*, not to convert option into a contract to sell, although it provided for payment for improvements which might be placed on the premises at time option was taken up and recognized assignment of option.

5. CONTRACTS—ACCEPTANCE OF OPTION.

   Acceptance of an option must be in strict compliance with the terms proposed by the option both as to the exact thing offered and within the time specified, or the right will be lost.

6. SPECIFIC PERFORMANCE—BURDEN OF SHOWING COMPLIANCE WITH TERMS OF OPTION.

   Holder of an option seeking specific performance has burden of showing his compliance with its terms.

7. SAME—TENDER—WAIVER—EVIDENCE.

   In suit for specific performance by holder of option, evidence *held*, insufficient to support contention that necessity for specific tender was waived by unwarranted demand on part of land owner.

8. SAME—SUFFICIENCY OF TENDER—EVIDENCE.

    In suit for specific performance by holder of option, finding of trial court that no sufficient tender was made is affirmed.

Appeal from Macomb; Spier (James E.), J. Submitted October 18, 1934. (Docket No. 135, Calendar No. 37,873.) Decided January 7, 1935.

Bill by John N. Muirhead against Bertha Freimann and Leonard G. Freimann and wife for specific performance and an accounting under an alleged option to purchase a brewery. Bill dismissed. Plaintiff appeals. Affirmed.

*Bert V. Nunneley and John H. Nunneley,* for plaintiff.

*Stone & Matthews (Rosenbusch & Retzlaff,* of counsel), for defendants.

NELSON SHARPE, J. Pursuant to negotiations theretofore had, H. H. Harbison, of Detroit, on April 11, 1933, presented to the defendants, Leonard Freimann and his wife and Bertha Freimann, his mother, of Mt. Clemens, a land contract in the usual form for the sale by the latter to the former of certain property in Mt. Clemens which had formerly been used for brewery purposes. The purchase price was fixed at $65,000, $2,000 to be paid on the execution and delivery of the contract, $13,000 on or before June 5, 1933, and the balance secured by a mortgage on the premises. The defendants declined to execute the contract, whereupon a supplemental agreement was attached thereto which contained the following provision:

"In the event that said sum of $13,000 is not paid on or before June 5, 1933, at six o'clock p. m. all

rights of the purchaser shall cease and determine under this agreement and the seller shall have the right to retain the said sum of $2,000 as and for liquidated damages and the purchaser shall relinquish to said seller all claim to the said land, either in law or in equity and also all claim to the said sum of $2,000 so paid as aforesaid and no claim of the purchaser under this contract or agreement shall then be effectual; it being the intent and purpose of all parties hereto that this contract shall be treated as an option and that the rights of the purchaser hereunder shall be those of an optionee."

The contract and this agreement were then executed by the parties and delivery thereof duly made.

On May 11, 1933, another agreement, called a "rider," was annexed thereto. It recited that Harbison had assigned his interest in the contract to Joseph F. Schmidt and John N. Muirhead and that the defendants consented thereto. It provided that the purchasers should pay to the sellers approximately $1,500 for certain improvements and alterations in the premises, the exact amount to be determined by invoices and receipts for material and labor; "this amount to be paid at the time of taking up said option or agreement," and that "the said option agreement" of April 11, 1933, as therein modified "shall be and remain in full force and effect."

On June 30, 1933, the plaintiff, John N. Muirhead, filed the bill of complaint herein. He set up the several instruments above referred to, alleged an offer to perform and tender on his part on June 5th and the defendants' refusal to accept the same. He alleged that Joseph F. Schmidt had assigned his interest in the contract to him. He prayed for specific performance and an accounting by defend-

ants of moneys due him for the use and occupancy of the premises.

The defendants in their answer admitted the execution of the several instruments, alleged that they constituted but an optional agreement to purchase, and denied that any offer to perform or tender had been made.

After the submission of proofs, the trial court found that plaintiff's rights under the written instruments were in the nature of an option to purchase, and that no tender had been made to entitle him to a conveyance, and entered a decree dismissing the bill of complaint, from which plaintiff has taken this appeal.

When the first of these instruments, the land contract in the usual form, was presented to the defendants, they declined to execute it. Instead of preparing a new agreement which would express the intent of the parties, resort was had to the supplemental one which was annexed thereto. It seems clear that the objection of the defendants was based upon the fact that they were unwilling to enter into a contract as vendors to sell the property to the vendee named therein. They were willing to give to him the right to purchase within a time fixed as provided for in the supplemental agreement, followed by language which could not be misunderstood "it being the intent and purpose of all parties hereto that this contract shall be treated as an option and that the rights of the purchaser hereunder shall be those of an optionee."

While the use of the word "option" is not in itself controlling (*Greenough* v. *Willcox*, 238 Mich. 52), as used in these instruments it but expressed the intention of the defendants, and the only apparent purpose of the supplemental agreement was to

change their obligation from that of vendors to that of persons offering to sell on the conditions stated therein. The test to be applied in such cases is, Are the sellers obligated to sell and the purchaser to buy? *Range* v. *Davison*, 242 Mich. 73. It seems clear that under these written instruments the defendants could not have enforced specific performance on the part of the plaintiff and, if not, he is without remedy as against them. *Bilansky* v. *Hogan*, 190 Mich. 463.

Were the rights of the parties affected by the "rider" attached to the agreement executed on May 11, 1933? It provided for recognition of the assignment to Schmidt and Muirhead and that, if they exercised the option, they should pay, in addition to the $13,000, the cost of any improvement the defendants should place upon the property prior thereto; "this amount to be paid at the time of taking up said option or agreement." While this provision increased the amount to be paid on the 5th day of June, and may be considered on the question of tender, it in no way changed the option agreement into one of contract to sell.

"An option is but an offer, strict compliance with the terms of which is required; acceptance must be in compliance with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost." *Bailey* v. *Grover*, 237 Mich. 548, 554.

To entitle the plaintiff to specific performance, the burden was cast upon him to show that he had complied with its terms. To do so he was required to pay to the defendants on or before June 5, 1933, the sum of $13,000 and also the cost of improvements made by them. There is much dispute as to what

occurred on that day. The plaintiff testified that he went to the office of Mr. Matthews, one of the defendants' attorneys, to close the deal; that he had $17,000 in cash in his possession to do so; that the defendant Leonard Freimann, who was then present, demanded payment of $18,000, or $5,000 in addition to the $13,000, for the improvements; that he asked for the invoices and receipts for moneys expended, and Freimann declined to produce them and said, "If you want this plant you have got to pay me $18,000 cash," and that he did not produce any money or make any specific tender at that time.

The defendant Leonard Freimann testified that when Muirhead came to Matthews' office on June 5th he said he did not have the money to take up the option and "wanted another ten days' extension," and that he then said to him, "the deal is all off;" that there was some talk about the cost of the improvements and the mortgage, but at no time did he demand payment of $18,000, and that no money was produced or tender made to him by Muirhead. His testimony in essential particulars is corroborated by that of his mother, the defendant Bertha Freimann, and Mr. Matthews, who were also then present.

Counsel for the plaintiff insist that there was an unwarranted demand made on the part of the defendants and the necessity for a specific tender thereby dispensed with, but this contention is not supported by the preponderance of the evidence. Without stating it at greater length, we agree with the trial court that no sufficient tender was made.

The decree dismissing the bill of complaint is affirmed, with costs to appellees.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.