JUDD *v.* CARNEGIE.

1. EQUITY—MORTGAGES—CONSTRUCTION OF INSTRUMENTS.

A court of equity has power to decree an equitable mortgage under proper circumstances and to construe an instrument in the form of an absolute conveyance as security for the payment of a debt.

2. MORTGAGES—CONSTRUCTION OF ABSOLUTE CONVEYANCE—EVIDENCE.

A party asserting that an instrument in the form of an absolute conveyance to be a mortgage, or security in the nature of a mortgage, has the burden of establishing such fact by clear and satisfactory proof.

3. TRUSTS—RESULTING—STATUTES.

Party claiming an equitable mortgage interest in land is barred by statute from claiming a resulting trust in such land (3 Comp. Laws 1948, § 555.1 *et seq.*).

4. QUIETING TITLE—CANCELLATION OF INSTRUMENTS—EVIDENCE.

In suit to quiet title to land wherein defendant sought to establish an equitable mortgage, instrument whereby the parties cancelled theretofore existing land contracts was properly found by the trial judge to have effected such purpose under record presented which indicated defendant had been financially unable to comply with such contracts and showed he had thereafter entered into a lease with plaintiff and latter leased part of the premises to others.

Appeal from Cass; Warner (Glenn E.), J. Submitted April 8, 1949. (Docket No. 41, Calendar No. 44,269.) Decided May 18, 1949.

REFERENCES FOR POINTS IN HEADNOTES

[1] 36 Am. Jur., Mortgages, § 125.
[1] Deed absolute on its face, with contemporaneous agreement or option for repurchase by grantor, as a mortgage *vel non.* 79 A.L.R. 937; 155 A.L.R. 1104.
[2] 36 Am. Jur., Mortgages, § 133.

Bill by Richard M. Judd, individually and as executor of the estate of William F. Judd, deceased, against William G. Carnegie to quiet title to real estate. Cross bill by defendant against plaintiff to have transactions relating to real estate declared a mortgage. Decree for plaintiff. Defendant appeals. Affirmed.

*Burns & Hadsell,* for plaintiff.

*Seymour & Seymour (Max C. Liss* and *Nat M. Kahn,* of counsel), for defendant.

CARR, J. Plaintiff brought suit individually and as executor of the will of his father, William F. Judd, deceased, to quiet title to certain lands in Cass county. It is his claim, as set forth in the pleadings and in his testimony on the trial in circuit court, that following the death of his father he became president of the Judd Lumber Company, a corporation carrying on business in the city of Dowagiac, that at that time he discovered that defendant was indebted to the company for building material purchased and delivered, that defendant was also indebted to others from whom he had purchased materials in the construction of certain buildings, and that attempts on his part to collect from defendant were unsuccessful. Plaintiff further claims that the buildings, in the construction of which the materials in question had been used, were located on land that defendant was purchasing under contract, and that defendant was also purchasing other real estate in like manner. Thereafter plaintiff, with the approval of defendant, paid to the respective vendors in said contracts the balances remaining and received deeds to the properties. Plaintiff and defendant then entered into a land contract by the terms of which the former agreed to sell the prop-

erty to the latter for the sum of $8,000, which amount was determined by adding the payments made to the contract vendors by plaintiff and the obligations of defendant for materials purchased by him from the Judd Lumber Company. Said contract was executed on or about May 26, 1928.

Thereafter defendant made further purchases from the Judd Lumber Company, and on June 25, 1930, the parties entered into a second contract in the sum of $10,000, defendant agreeing to make payments of $1,000 on June 30, 1930, $1,500 on June 30, 1931, $1,500 on June 30, 1932, $3,000 on June 30, 1933, and the balance on June 30, 1934, with interest at 7 per cent. per annum. No payments were made as agreed other than a payment of interest on June 30, 1930. In January, 1932, plaintiff served on the defendant a notice of forfeiture of the contract. Under date of May 4th following, defendant signed a written instrument referring to the default and declaring the contract to be null and void, reciting therein also that he surrendered possession of the entire property described in the contract. The undertaking further released plaintiff from any and all liability thereon. The parties then entered into a lease of the property to defendant at an agreed rental of $1,000 for the season from May 1, 1932, to November 1st of the same year. The lease further specified that "It is further agreed that any and all of this property may be sold and possession will be given upon 10 days' notice." The payments specified in the lease were not made in full.

In 1935, plaintiff executed to defendant a deed of a lot and a portion of another lot on which defendant had previously constructed buildings. Application for a loan from the Home Owners' Loan Corporation was made, and a loan was finally obtained, but in an amount less than requested. Plaintiff, in connection with this transaction, executed a so-

called mortgagee's consent to take bonds, indicating in terms that he held a lien or claim on the title to the property, and agreed to take bonds of the Home Owners' Loan Corporation in adjustment of his claim. Plaintiff insists that this action on his part was taken in order to enable defendant to finance the transaction.

In the fall of 1945, defendant filed in the office of the register of deeds of the county an affidavit in which he set forth that he was on May 26, 1928, the legal owner of the lands involved in this case, and that the transactions with plaintiff above referred to constituted a mortgage. Defendant further set forth that he claimed title to the lands, subject to said mortgage. Upon discovering in the fall of 1946 that the affidavit had been filed as indicated, plaintiff started the instant suit. Defendant filed an answer and a cross bill, setting forth in his pleadings substantially the claims made in the affidavit. Specifically, he asserted in his pleadings and in his testimony on the trial that the original transaction, wherein deeds were executed to plaintiff by the vendors in the land contracts evidencing defendant's interest in the properties in question, involved merely the giving of security for the payment of his obligations to the plaintiff, that the character of the transaction was not subsequently changed, and that the discharge of the second land contract entered into between himself and plaintiff was executed in 1932, subject to a verbal understanding and agreement that the prior arrangement continued. Defendant claims further in this regard that the reason for executing such cancellation was to enable plaintiff to sell the property, and that the execution of the lease covering the season of 1932 did not, in fact, create the relation of lessor and lessee as between the parties. Defendant in his cross bill asked that he be adjudged to be the owner of the premises,

that an accounting between himself and plaintiff be had, and that upon the payment of the amount found due to plaintiff a conveyance of the real estate should be required.

On the trial of the case each party testified at some length in support of the respective positions taken in the pleadings. After listening to the conflicting testimony the trial court accepted plaintiff's claim that the contract evidencing defendant's interest in the property was cancelled by the instrument executed by defendant on May 4, 1932, and that all rights of the defendant in and to the property were thereby terminated. A decree was entered accordingly, granting to plaintiff Judd, and to grantees of a part of the property who were joined as plaintiffs before the entering of the decree, the relief sought by the bill of complaint. Defendant has appealed.

The power of a court of equity to decree an equitable mortgage under proper circumstances and to construe an instrument in the form of an absolute conveyance as security for the payment of a debt, or the performance of some other obligation, is well established. *Gamble* v. *Ross,* 88 Mich. 315; *Wells* v. *Park,* 233 Mich. 277; *Skupinski* v. *Provident Mortgage Co.,* 244 Mich. 309; *Levenson* v. *Cohen,* 250 Mich. 31. However, the burden of proof is on the party asserting such a transaction to be a mortgage, or security in the nature of a mortgage, to establish such fact by clear and satisfactory proof. *Crane* v. *Read,* 172 Mich. 642; *Brennan* v. *Finn,* 217 Mich. 584; *Rehn* v. *Booth,* 299 Mich. 311. Under the specific provisions of the statutes of this State (3 Comp. Laws 1948; § 555.1 *et seq.* [Stat. Ann. § 26.51 *et seq.*]), defendant may not claim a resulting trust in his favor. *Crane* v. *Read, supra.* His interest in the property in the first instance was evidenced by the land contracts. When plaintiff acquired his interest in the manner above indicated, defendant

accepted from him a contract in effect evidencing a continuance of the character of interest that he had previously had. The subsequent contract in the sum of $10,000 was apparently executed to include the additional indebtedness that had been incurred. See *Rowe* v. *William Ford & Co.,* 257 Mich. 646.

The principal question in the case is whether the cancellation of the contract, executed on May 4, 1932, was, as plaintiff claims, what it purported to be. As before pointed out, the testimony of the parties was squarely in conflict on this point. The trial judge had the advantage of listening to the testimony, and of weighing it in the light of the probabilities of the situation and the actual conduct of the parties. Obviously, he came to the conclusion that defendant had not established that the instrument of cancellation executed by him did not effectuate its expressed purpose. On the record before us, we are impressed that such conclusion was correct.

In his testimony defendant admitted that after June 30, 1930, when he made the last payment of interest on the contract, conditions became "increasingly difficult" for him. He testified also as to the conditions existing in 1932 and indicated that plaintiff was "putting great pressure" upon him. It is a fair inference that defendant did not comply with the terms of the second contract between himself and plaintiff because he was not financially able to do so. Under such circumstances the agreement for the cancellation of the contract was not illogical. The execution of the lease further evidences an understanding by both parties that the contract was definitely and completely terminated. *Miner* v. *Boynton,* 129 Mich. 584; *Dundas* v. *Foster,* 281 Mich. 117. It is significant, also, that defendant did not tender payments to be credited on his contract. The record further indicates that after 1930 plaintiff paid the taxes and maintained the insurance, and

that, following the cancellation of the contract and the termination of the subsequent lease, he rented portions of the property to others.

Counsel for defendant stress the participation of plaintiff in the negotiations with the Home Owners' Loan Corporation in 1935, claiming in effect that in signing the consent to take bonds in discharge of his interest in the property he thereby conceded that he was at the time merely a mortgagee. Obviously, however, defendant understood the situation and was not misled to his prejudice. It must be borne in mind also in this connection that defendant accepted from plaintiff deeds of the property on which the loan was procured. Plaintiff's explanation of the transaction was logical, particularly so in view of prior dealings between the parties.

Defendant's conduct with reference to the property, following the execution of the cancellation agreement in May, 1932, is clearly inconsistent with the claims that he now makes with reference to his rights of ownership. The situation in *Alber* v. *Bradley*, 321 Mich. 255, to which attention is called in his brief, is not analogous to that involved here. There, plaintiffs, who were insisting that a deed should be construed as a mortgage, dealt with the property as their own, paid the taxes, and maintained the insurance. They also improved the property at expense to themselves. The conduct of the parties was consistent with plaintiffs' claims. Such is not the situation in the case at bar. Here defendant's conduct, prior to the filing of the affidavit in the fall of 1945, except as to the property covered by the mortgage to the Home Owners' Loan Corporation, which plaintiff had deeded to him, was inconsistent with any theory other than that his interest in the property had been terminated by the cancellation of the land contract. See *Farrell* v. *Hannan Real Estate*

*Exchange,* 251 Mich. 669; *Annett* v. *Stout,* 322 Mich. 457.

The conclusion reached on the principal question in the case renders it unnecessary to discuss other questions raised by counsel. We think that the controversy was correctly determined by the trial court, and the decree is affirmed, with costs to plaintiff.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.