### KENT *v.* KLEIN.

1. TRUSTS—CONSTRUCTIVE TRUST—DEED TO DAUGHTER FOR INCOMPETENT.

   Chancery will not permit one to enrich himself at the expense of another by closing his eyes to what is clear to the rest of mankind, hence, constructive trust was raised in favor of plaintiffs, heirs of deceased brother, by mother's deed of land to defendant, decedent's sister and delivered to another brother, where it is shown the land was intended for the decedent.

2. SAME—CONSTRUCTIVE TRUST—EQUITY.

   The constructive trust is a formula through which the conscience of equity finds expression, equity converting the legal titleholder into a trustee when it is found that the property has been acquired in such circumstances that the titleholder may not, in good conscience, retain the beneficial interest.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 54 Am Jur, Trusts §§ 219, 220, 242.
[2, 3, 6, 7] 54 Am Jur, Trusts § 218.
[4] 54 Am Jur, Trusts §§ 219, 245.

3. SAME—CONSTRUCTIVE TRUST—PROMISES.
   The constructive trust is as contemptuous of promises not made
   as of promises broken.

4. SAME—CONSTRUCTIVE TRUST—EQUITY.
   It is not necessary that property be wrongfully acquired in order
   to constitute the titleholder a constructive trustee, it being
   sufficient that it be unconscionably withheld from the beneficial
   owner.

5. SAME—CONSTRUCTIVE TRUST—LOSS—EVIDENCE.
   A plaintiff, seeking to establish a constructive trust, need not
   show that he has suffered a loss.

6. SAME—CONSTRUCTIVE TRUST.
   Constructive trusts do not arise by agreement or from intention,
   but by operation of law.

7. SAME—CONSTRUCTIVE TRUSTS—CREATION—REMEDY.
   Constructive trusts, also known as trusts *ex maleficio*, trusts *ex
   delicto*, or involuntary trusts, are raised by a court of equity
   to prevent a failure of justice.

8. SAME—CONSTRUCTIVE TRUSTS—CONVEYANCE TO BENEFICIARIES.
   Land held by defendant sister as constructive trustee for plain-
   tiffs, heirs of her deceased brother, under a deed from her
   mother, is ordered conveyed to plaintiffs rather than returned
   to the estate of the mother, where evidence shows it was in-
   tended for the deceased brother (CL 1948, § 566.106).

Appeal from Oakland; Doty (Frank L.), J. Sub-
mitted April 8, 1958. (Docket No. 10, Calendar No.
47,408.) Decided June 12, 1958.

Bill by Evelyn M. Kent and John Kent, Jr., against
Edith Hester Klein to impress trust and obtain spe-
cific performance thereof by conveyance of real prop-
erty. Decree for plaintiffs. Defendant appeals. Af-
firmed.

*Arthur H. Rice* (*Eugene Jay Hirsch,* of counsel),
for plaintiffs.

*Wilson, Ingraham & Kavanagh,* for defendant.

SMITH, J. This is a family case, an effort to impose a constructive trust on one of the daughters. It involves a piece of land, the ownership of which is disputed. The mother of the children here involved was Mrs. Barbara Klein. She owned real estate in Oakland county. She had 6 children, but she was going to split her property only 5 ways. The reason for this was that the 6th child, a daughter living in California, had been helped in other ways.

Actually, however, there were only 4 grantees to her real property. The son who would normally have been the 5th grantee, John, was not well. He had undergone treatment, at times, in various mental institutions. His mother felt it would be unwise to vest title in him. Consequently, acting upon the advice of another son, Harold, and a son-in-law, she put the title to certain acreage intended for John (according to the proofs and the findings of the trial chancellor) in the name of his sister, Edith Klein, defendant here. On the same date she conveyed to Edith other acreage, in fact intended for her, and concerning which no question is raised. Thus on the same date the mother conveyed to her daughter, Edith, by 2 separate deeds, 2 separate parcels of real estate, one admittedly intended for her, the other allegedly for her at-times incompetent brother, John. Edith was selected as titleholder, it was testified, because she had no creditors.

Edith's deed was delivered to her. The one allegedly intended for John was not. Although the latter deed was recorded, it was kept in Harold's possession. Edith was not present when the arrangement was worked out and the proofs do not disclose whether or not she knew anything about it right away. She did not take the stand. She did know about it, however, at the time of John's death, because she was told of it by Harold, who later asked her to convey the land to John's widow. She re-

fused.    Plaintiffs (John's widow and only son) brought this bill in chancery to impress a constructive trust upon the property and "to obtain specific performance of said trust." The trial chancellor found that it was the intention on the part of the mother to have the property held for the benefit of the brother and "for that purpose only," that a valid trust had been established and "that the deed was given for the benefit of the incompetent son." Conveyance was accordingly decreed to plaintiffs. Defendant appeals.

The appellant sets up the statute of frauds* as preventing the imposition of an express trust and asserts that the record does not support the imposition of a constructive trust. It is said that there is no evidence of a confidential or fiduciary relationship, and that mere family ties are not enough, citing *Funk* v. *Engel*, 235 Mich 195, and similar cases. It is possible that defendant's self-interest has distorted her objectivity. She holds this land not merely because John was her brother but because, in addition, he was her incompetent brother. She holds this land because her mother implicitly trusted her honor, her integrity, and her familial solicitude. A bond the mother demanded not, nor writing, nor, indeed, a promise. Foolish it may have been for her to have trusted so blindly, but it lies ill in the mouth of the honored child to assert selfish advantage therefrom. The sister's cupidity in seeking a double portion at the expense of her incompetent brother gains nothing in either justification or luster by ranging it alongside a mother's possibly foolish

---

* CL 1948, § 566.106 (Stat Ann 1953 Rev § 26.906):

"No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same. or by some person thereunto by him lawfully authorized by writing."

trust or, indeed, blind gullibility. Trust and confidence there was, in abundant measure. What was clear to the trial chancellor (that the land was intended for John) is equally clear to us and, as far as the sister is concerned, chancery will not permit one to enrich himself at the expense of another by closing its eyes to what is clear to the rest of mankind. Equity, to paraphrase, regards that as seen which ought to be seen, and, having so seen, as done that which ought to be done.

But what of the statute of frauds? Defendant urges again and again that she made no promise whatever to hold in trust, that nothing was said about a trust, and, as a clincher, that even if she had so orally promised the promise would have been unenforceable under the statute of frauds. Her conclusion is that she keeps the land.

What is overlooked in all of this is the fact that the constructive trust is not a trust at all, any more than a quasi-contract is a contract. See 4 Scott on the Law of Trusts, § 462.1. Both are remedial devices. The constructive trust, as it was put by Mr. Justice Cardozo, "is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not, in good conscience, retain the beneficial interest, equity converts him into a trustee." *Beatty* v. *Guggenheim Exploration Co.*, 225 NY 380, 386 (122 NE 378). It arises by operation of law. (*Cf.*, "unless by act or operation of law" in CL 1948, § 566.106 [Stat Ann 1953 Rev § 26.906] quoted in footnote, *supra.*) That defendant made no promise to hold in trust is utterly irrelevant. The constructive trust is as contemptuous of promises not made as of promises broken. The fact that a thief fleeing with his loot promises nothing avails him nothing. He remains a constructive trustee. *Lightfoot* v. *Davis,* 198 NY 261

(91 NE 582, 29 LRA NS 119, 139 Am St Rep 817). Fraud in the inception we do not require, nor deceit, nor chicanery in any of its varied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld. *Mc-Creary* v. *Shields,* 333 Mich 290; *Rudenberg* v. *Clark,* 72 F Supp 381. Nor is it necessary, to move the chancellor's conscience, that plaintiffs have suffered a loss, although in most cases there is both a loss to the plaintiffs and a like gain to the defendant. *United States* v. *Carter,* 217 US 286 (30 S Ct 515, 54 L ed 769); *Olwell* v. *Nye & Nissen Co.,* 26 Wash2d 282 (173 P2d 652, 169 ALR 139); *Carey* v. *Safe Deposit & Trust Co.,* 168 Md 501 (178 A 242).

It is enough, to compel the surrender, that one feed and grow fat on that which in good conscience belongs to another, that he enjoy a windfall resulting in his unjust enrichment, that he reap a profit in a situation where honor itself furnishes rich reward, where profit, the mainspring of the market place, is both foreign and inimical to the trust reposed. These principles have been firmly established in this jurisdiction for many years and we do not propose to depart therefrom. Our holding in *Stephenson* v. *Golden,* 279 Mich 493, on rehearing, 279 Mich 710, contains a comprehensive summary of the authorities. We there commented, in part, as follows (p 740):

"In *Weir* v. *Union Trust Co.,* 188 Mich 452, 463, it is said:

" 'Constructive trusts arise by operation of law. The following is found in 39 Cyc, p 169:

" ' "Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, active or constructive, is their essential element. Actual fraud is not necessary, but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should

be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio* or *ex delicto*, or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice." ' "

Finally, appellant argues, even if she be found to be holding the land as constructive trustee, she should be ordered to convey it back to the estate of the mother, rather than to plaintiffs. Conveyance to them, we are told, "would be taking the constructive trust doctrine too far toward enforcement of an oral agreement concerning land." This journey, if, indeed, it be such, does not appall us. When the remedial device of the constructive trust is employed, chancery orders whatever conveyance will remedy the wrong suffered, whether back to transferor, or to some intended third person. See Restatement, Restitution, §§ 169 and 123. Here, as the trial chancellor held, the land was intended for John. It shall, to his heirs, the plaintiffs, be conveyed.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.