CERLING v HEDSTROM

1. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW—FINDINGS OF FACT.

Equity cases are reviewed *de novo;* however, the Court of Appeals accords considerable weight to the trial court's findings of fact.

2. STIPULATIONS—FINDINGS OF FACT—EVIDENCE—DEEDS.

The trial court's finding that there were no defects in a defendant's record title to certain property was supported by the record, even though defendant's deed was not offered or received into evidence, where plaintiff had stipulated at trial that defendant was the record owner.

3. TRUSTS—CONSTRUCTIVE TRUST—EVIDENCE—SUFFICIENCY.

"Mere" expenditure of "relatively small sums of money" by a plaintiff and his brothers and sisters was insufficient to show a constructive trust giving the plaintiff and others an interest in a cottage; the expenditures were not out of proportion to the use of the premises by those on whose behalf plaintiff sought relief and, thus, constituted insufficient evidence of an agreement.

4. TRUSTS—CONSTRUCTIVE TRUST—CREATION—PROOF OF INTENT.

There need be no proof of intent to create a constructive trust; a constructive trust is in reality not a trust, but rather a judicial remedy to which resort is had after the fact and arises by operation of law.

5. TRUSTS—CONSTRUCTIVE TRUST—ELEMENT OF INTENT—BURDEN OF PROOF—EVIDENCE—RECORD—COTTAGE—OWNERSHIP.

A trial court did not erroneously conclude that a plaintiff must prove an element of "intent" to prevail on a constructive trust theory when it stated that there was insufficient evidence that "a constructive trust was intended in this case", because the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 730, 822.
[2] 50 Am Jur, Stipulations §§ 16, 17.
[3–5] 54 Am Jur, Trusts § 218 *et seq.*

reference to intent was directed to the insufficiency of proof by plaintiff, who was seeking to have the defendant declared a constructive trustee of a one-half interest in a cottage for the benefit of plaintiff and others, that the predecessors in title to a cottage intended to benefit plaintiff's class; the record discloses no error in this regard, nor does the Court of Appeals find that the record sustains plaintiff's contention that retention of full legal title by defendant would otherwise be inequitable.

Appeal from Mason, Charles A. Wickens, J. Submitted Division 3 November 6, 1973, at Grand Rapids. (Docket No. 16682.) Decided January 17, 1974.

Complaint by Donald Cerling against Paul Hedstrom seeking to have defendant declared a constructive trustee of a one-half interest in a lake cottage for the benefit of plaintiff and others. Judgment for defendant. Plaintiff appeals. Affirmed.

*Cochran, Vander Ploeg, Collinge & Silky* (by *William J. Cole),* for plaintiff.

*Leonard J. Gavigan,* for defendant.

Before: R. B. BURNS, P. J., and DANHOF and O'HARA,* JJ.

DANHOF, J. This is an action in equity involving a lake cottage located in the Township of Summit, Mason County, Michigan. On May 24, 1971, plaintiff filed his complaint in this cause seeking to have defendant, Paul Hedstrom, declared a constructive trustee of a one-half interest in this property for the benefit of plaintiff and other descendants of the Stenfelt family. Plaintiff's grounds for contending that a constructive trust

_____
* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

should apply can be summarized from a portion of the complaint:

"That there long existed a contractual agreement between all the Stenfelt descendants including defendant, that the said premises would be, and continue to be used by them for their mutual pleasure and comfort, and that steps would be taken to place the legal title to said premises in the names of all interested Stenfelt descendants in order to more clearly effectuate this purpose."

At trial, the parties stipulated, prior to the taking of proofs, as to the chronological sequence of conveyances relating to the property in question, and to its present recorded ownership. The property was acquired in 1922 by plaintiff's maternal grandparents, Carl and Anna Stenfelt. Upon the grandfather's death in 1948, record title to the property vested in plaintiff's grandmother. In 1954, the grandmother created a joint tenancy between herself and her two surviving daughters, Alice Cerling, plaintiff's mother, and Carol Hedstrom, defendant's wife. Plaintiff's grandmother died in 1954, and title vested in Alice and Carol by virtue of survivorship. After the death of plaintiff's mother in 1966, the cottage continued to be used by both the Cerling and Hedstrom families. In August of 1968, Carol Hedstrom quitclaimed title to the cottage to herself and her husband jointly. After Carol's death in 1969, defendant recorded the quitclaim deed and informed plaintiff that he, defendant, would assume exclusive ownership of the cottage.

The trial court denied plaintiff the relief which he sought in an opinion which in part stated:

"There is nothing ambiguous in the terms of the documents under which the defendant holds title. If any

of the predecessors in title had desired to put the plaintiff, or that class of people for whom he speaks, as owners, jointly, of the real estate, it would have been no problem to have gone to an attorney's office and created such a joint title for the benefit of the plaintiff and the other heirs. The fact that this was not done shows that the predecessors in title were content with the title as it stood. The mere fact that the plaintiff and his brothers and sisters, and other heirs, used the premises and contributed relatively small sums of money to the maintenance of the property, depending upon their use, does not carry the preponderance of the evidence sufficiently to convince the court that a constructive trust was intended in this case. The facts and circumstances of the predecessors' in title conduct, and the conduct of the parties to this case can be explained away more logically than a constructive trust theory.

"Therefore, the court feels that even though there had been some possibility of considering giving the plaintiff, and other persons, an interest in the real estate, that the predecessors in title changed their minds and decided not to do so, and that is why the plaintiff has no legal interest of record.

"The plaintiff shows the court insufficient evidence to presume they have a right, based upon a constructive trust, of any consideration which would be binding upon the owners of the property in the nature of a contractual right.

"Therefore, the plaintiff's action is dismissed for failure to produce the necessary proofs to carry the preponderance of the evidence on a constructive trust theory, or any other theory."

On appeal, plaintiff claims that the trial court's findings are contrary to the evidence and clearly erroneous.

Equity cases are reviewed *de novo. Bosley v Prueter,* 44 Mich App 716; 205 NW2d 861 (1973). However, we accord considerable weight to the trial court's findings of fact. *Williams v Metoyer,* 46 Mich App 573; 208 NW2d 653 (1973).

Plaintiff takes issue with the trial court's statement that, "There is nothing ambiguous in the terms of the documents under which the defendant holds title". Plaintiff claims that this finding is not supported by the evidence since defendant's deed was not offered or received into evidence. However, plaintiff stipulated at trial as to the status of the deed and agreed that defendant was the record owner. The trial court was therefore justified in assuming that there were no defects or ambiguities.

Plaintiff contends that the trial court erred when it stated, "If any of the predecessors in title had desired to put the plaintiff, or that class of people for whom he speaks, as owners, jointly, of the real estate, it would have been no problem to have gone to an attorney's office and created such a joint title for the benefit of the plaintiff and the other heirs." However, the trial court's language must be understood in the light of the allegations made in plaintiff's complaint:

"However, the conveyance of legal title as contemplated was never accomplished due to the death of several Stenfelt descendants and particularly the death of plaintiff's parents, Thure Cerling and Alice (Stenfelt) Cerling in the year 1966. That after the death of plaintiff's parents, legal title to said premises became solely vested in Carol (Stenfelt) Hedstrom as surviving joint tenant, who many times stated that the long standing agreement would be honored but who died in the year 1969 before such could be performed."

The trial court found that, although at one time the predecessors in title may have considered giving plaintiff's class some interest in the cottage, there had been a change of mind. An examination of the record convinces us that the trial court was correct in concluding that plaintiff failed to carry

the burden of proving that retention of full legal title by the defendant would be unconscionable.

Plaintiff challenges the trial court's finding that "mere" expenditure of "relatively small sums of money", by plaintiff, his brothers and sisters was insufficient to convince the court that a constructive trust would be appropriate. The trial court's language must be interpreted in light of plaintiff's contention that payment of a proportionate share of cottage expenses and taxes between 1966 and 1969 was some evidence of the agreement between all Stenfelt descendants. The trial court found that these expenditures were not out of proportion to the use of the premises by those on whose behalf plaintiff sought relief and, thus, constituted insufficient evidence of the agreement.

Lastly, plaintiff argues that the trial court erroneously concluded that plaintiff must prove an element of "intent" to prevail on a constructive trust theory. Plaintiff points to that portion of the court's opinion which stated that there was insufficient evidence that "a constructive trust was intended in this case". It is true that there need be no proof of intent to create a trust. A constructive trust is in reality not a trust, but rather a judicial remedy to which resort is had after the fact. As was said in *Kent v Klein,* 352 Mich 652, 657; 91 NW2d 11, 14 (1958):

"Our holding in *Stephenson v Golden,* 279 Mich 493 [272 NW 881], on rehearing, 279 Mich 710 [276 NW 849 (1937)], contains a comprehensive summary of the authorities. We there commented, in part, as follows (p 740 [276 NW p 860]):

" 'In *Weir v Union Trust Co,* 188 Mich 452, 463 [154 NW 357, 360 (1915)], it is said:

" ' "Constructive trusts arise by operation of law. The following is found in 39 Cyc, p 169:

" ' " 'Constructive trusts do not arise by agreement or

from intention, but by operation of law; and fraud, active or constructive, is their essential element. Actual fraud is not necessary, but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio* or *ex delicto,* or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice.'"'"

However, the Court in *Klein* made the tacit distinction between intent to create a trust and intent to benefit those for whom relief is sought:

"What was clear to the trial chancellor (that the land was intended for John) is equally clear to us and, as far as the sister is concerned, chancery will not permit one to enrich himself at the expense of another by closing its eyes to what is clear to the rest of mankind. Equity, to paraphrase, regards that as seen which ought to be seen, and, having so seen, as done that which ought to be done." (352 Mich at 656; 91 NW2d at 13–14).

* * *

"Here, as the trial chancellor held, the land was intended for John. It shall, to his heirs, the plaintiffs, be conveyed." (352 Mich at 658; 91 NW2d at 15).

It is clear that the trial court's reference to intent was directed to the insufficiency of proof by plaintiff that the predecessors in title intended to benefit plaintiff's class. The record discloses no error in this regard; nor do we find that the record sustains plaintiff's contention, under the doctrine as enunciated in *Klein, supra,* that retention of

full legal title by defendant would otherwise be inequitable.

Affirmed, costs to defendant.

All concurred.