GRASMAN v JELSEMA

1. CONTRACTS—SETTLEMENT AGREEMENTS—OPTIONS TO REPURCHASE
    —VENDOR AND PURCHASER—EXECUTORY CONTRACTS—REAL
    PROPERTY.
    A settlement agreement and option to repurchase does not consti-
    tute an executory contract for the purchase and sale of prop-
    erty, where there is no indication in the document of an intent
    to sell the property and where the intent of the settlement
    agreement appears to be to terminate the plaintiffs' rights of
    possession in exchange for defendant's dismissal of his lawsuit
    to recover possession.

2. CONTRACTS—CONTRACTS TO SELL—OPTIONS TO BUY—OBLIGATIONS
    OF PARTIES TO CONTRACT.
    An agreement is considered an option to buy and not a contract
    to sell where the purchaser is not obligated by the agreement
    to buy.

3. VENDOR AND PURCHASER—CONTRACTS—REAL PROPERTY—LAND
    CONTRACTS—OBLIGATIONS OF PARTIES TO CONTRACT.
    Both of the parties to a land contract are obligated by the
    contract, the seller is obligated to sell and the purchaser is
    obligated to buy.

4. CONTRACTS—OPTIONS TO BUY—CONTRACTS TO SELL—MUTUALITY OF
    OBLIGATIONS.
    An agreement is an option to buy and not a contract to sell
    where there is no mutuality of obligation evidenced by the
    document.

5. CONTRACTS—OPTION CONTRACTS—ACCEPTANCE OF OPTION CON-
    TRACTS.
    Acceptance of an option must be in strict compliance with the

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 17 Am Jur 2d, Contracts § 244.
    77 Am Jur 2d, Vendor and Purchaser § 60.
[2–6] 77 Am Jur 2d, Vendor and Purchaser §§ 1, 27 *et seq.*
[7] 76 Am Jur 2d, Trusts § 620.
[8–10] 76 Am Jur 2d, Trusts § 221 *et seq.*

terms proposed by the option both as to the exact thing offered and within the time specified, or the right will be lost.

6. Contracts—Option Contracts—Burden of Proof—Specific Performance.

The holder of an option has the burden of showing compliance with the terms of the option where specific performance of the option is sought.

7. Trusts—Constructive Trusts—Burden of Proof.

The burden of proof is placed on the person seeking to establish a constructive trust.

8. Trusts—Constructive Trusts—Basis for Constructive Trusts.

A constructive trust may be based upon a breach of a fiduciary or confidential relationship, misrepresentation, concealment, mistake, undue influence, duress or fraud; it need not arise because the property was wrongfully acquired, and it may arise out of unconscionability and unjust enrichment.

9. Trusts—Constructive Trusts—Operation of Law.

A constructive trust is in reality not a trust, but rather a judicial remedy which arises by operation of law, to which resort is had after the fact.

10. Trusts—Constructive Trusts—Creation—Proof of Intent.

There need be no proof of intent to create a constructive trust.

Appeal from Ottawa, James E. Townsend, J. Submitted June 3, 1976, at Grand Rapids. (Docket No. 26200.) Decided August 24, 1976.

Complaint by Margaret Grasman and Louis Grasman against Jim M. Jelsema for possession of real property and an accounting, following certain settlement and security agreements entered into after the defendant constructed a building for the plaintiffs. Judgment for defendant. Plaintiffs appeal. Affirmed.

*James W. Bussard,* for plaintiffs.

*Jack R. Jelsema,* for defendant.

Before: DANHOF, C. J., and D. E. HOLBROOK and D. L. MUNRO,* JJ.

D. E. HOLBROOK, J. In 1966 the defendant Jim M. Jelsema constructed a building on property owned by the plaintiffs Margaret and Louis Grasman in the vicinity of Hudsonville, Michigan. Plaintiffs deeded the land to the defendant, and plaintiffs' corporation Grand Valley Farms, Inc. was given a land contract to repurchase the land. This arrangement was made to provide defendant with security for his investment.

When the plaintiffs failed to make payments on the land contract, a lease with option to buy was executed by the parties on July 1, 1967. Following default in the making of payments on the lease, the defendant commenced summary proceedings in district court to obtain possession of the premises. Defendant's intention was to recoup his investment in the property. Plaintiffs and defendant, and Grand Valley Farms, Inc. settled their rights and duties with respect to the property and the then pending litigation by executing an agreement on July 9, 1970 which terminated all rights and duties of the parties under the lease and option and provided for dismissal of the litigation and transfer of possession of the land to the defendant. Plaintiffs did give up possession shortly thereafter and defendant gave possession to a new lessee in September 1970. At the same time the defendant executed a one-year option to buy the land dated July 8, 1970 in favor of the plaintiff Louis Grasman. Defendant testified that through the execution of these documents he sought to terminate the previous security arrangements and place complete title to the property in himself. Nonetheless,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

he apparently believed he should give the plaintiffs one last opportunity to purchase the property, and therefore signed the one-year option dated July 8, 1970. Plaintiffs made no effort to contact the defendant nor did they tender acceptance of the offer to sell or tender any payment of the purchase price during the one-year period. When the plaintiffs did contact the defendant sometime after July 8, 1971 with regard to purchasing the property, the parties disagreed on the purchase price. Plaintiffs subsequently initiated a suit for an accounting in December 1972 in which judgment was rendered in favor of the defendant. Plaintiffs now appeal.

Plaintiffs first contend that the trial judge erred in holding that the settlement agreement and option to repurchase did not constitute an executory contract for purchase and sale of the property. However, the documents do not sustain this contention. The intent of the settlement agreement appears to be to terminate the plaintiffs' rights of possession to the property in exchange for defendant's dismissal of his law suit to recover possession of the property. There is no indication in the document of an intent to sell the property to the plaintiffs. Plaintiffs had obviously defaulted on the lease with option to purchase as they had on the earlier land contract. Although plaintiffs had been in possession for almost four years, defendant had received inadequate payments on their agreements. The delays in payment had already once resulted in reworking of their financial arrangements and, upon plaintiffs' continued default, defendant had been forced to institute summary proceedings to obtain possession of the

property. It appears that this settlement was neither unfair nor overreaching.[1] Substantial payments had been forthcoming and defendant sought to protect his interest in order to obtain possession and avoid this losing proposition. Defendant agreed to give up all rights under the lease and in return plaintiffs agreed to give up all rights in the property. Defendants did give plaintiff one last chance by subsequently granting an option.

*Judd v Carnegie*, 324 Mich 583; 37 NW2d 558 (1949), in essence controls here. The facts in *Judd* were remarkably similar. In *Judd* the defendant was indebted to plaintiff for construction materials used in certain buildings on land which defendant was purchasing. Plaintiff purchased the land from the vendors and plaintiff and defendant entered into land contracts. Defendant defaulted and the parties entered into a written agreement referring to the default and declaring the contract to be null and void, and reciting that defendant thereby

---

[1] Plaintiffs claim that they made payments of approximately $6,800. However, at trial they only introduced the following checks: Exhibit 10 was a check dated July 1, 1967 for $500, apparently payment on the original land contract, Exhibit 11 was a check dated 4-18-68 for $160, Exhibit 12 was a check dated 8-15-68 for $300, Exhibit 13 was a check dated 9-15-68 for $287, Exhibit 14 was a check dated 9-12-68 in the amount of $908, and Exhibit 15 was a check dated February 10, 1971 in the amount of $210 for tax payments. This totals $2,365, of which $500 was payment on the original land contract and $210 was a tax payment. Defendant admits these payments. Plaintiffs claimed either additional checks were lost or that some of the payments were made in cash with no receipts. They failed to prove any such payments. It must also be noted that per the lease and option to purchase, which called for payment of $863 on 7-1-68 and $283.96 per month each month thereafter, plaintiffs owed approximately $7,500 plus payment of taxes at the time of the settlement agreement. We note that of the $2,365 apparently paid, at least $210 represented tax payments and $500 represented payment on the original land contract. According to those figures, almost $6,000 was owing and due as of the time of the settlement. Furthermore, this disregards additional taxes, waste, damage, interest on late payments, etc. There certainly was adequate consideration for the settlement agreement in return for plaintiffs' surrendering possession and rights under the agreement. Defendant agreed not to pursue any remedies he had under this agreement.

surrendered possession of the property. The parties subsequently entered into a lease. Controversy developed and plaintiff brought an action to quiet title and defendant asked in his cross bill to be declared the owner of the premises after an accounting between himself and plaintiff and that upon payment of the amount found due to plaintiff a conveyance of the real estate should be granted. The Court found for plaintiff and observed:

"The principal question in the case is whether the cancellation of the contract, executed on May 4, 1932, was, as plaintiff claims, what it purported to be. As before pointed out, the testimony of the parties was squarely in conflict on this point. The trial judge had the advantage of listening to the testimony, and of weighing it in the light of the probabilities of the situation and the actual conduct of the parties.[2] Obviously, he came to the conclusion that defendant had not established that the instrument of cancellation executed by him did not effectuate its expressed purpose. On the record before us, we are impressed that such conclusion was correct.

"In his testimony defendant admitted that after June 30, 1930, when he made the last payment of interest on the contract, conditions became 'increasingly difficult' for him. He testified also as to the conditions existing in 1932 and indicated that plaintiff was 'putting great pressure' upon him. It is a fair inference that defendant did not comply with the terms of the second contract between himself and plaintiff because he was not financially able to do so. Under such circumstances the agreement for the cancellation of the contract was not illogical. The execution of the lease further evidences an understanding by both parties that the contract was definitely and completely terminated." *Judd, supra,* at 588; 37 NW2d 558, 560–561.

---

[2] The circuit judge in the instant case notes in his written opinion: "We were impressed by the frankness and openness of defendant as a witness".

We expressly find that the settlement of July 9, 1970 effectively terminated the rights of the plaintiffs. The parties were free to rescind their agreement and there is no evidence showing that this was unfairly or unconscionably done. See 77 Am Jur 2d, Vendor & Purchaser, § 534, p 663.

Since the settlement agreement does not constitute an executory contract for the sale of the property, the plaintiffs' contention must fall unless the option agreement of July 8, 1970 alone or in conjunction with the settlement agreement constitutes such a contract. Defendant correctly contends that the option was just an option to buy the property.

The distinction between an option and a land contract is that in the latter the seller is obligated to sell and the purchaser is obligated to buy, both parties being bound. *LeBaron Homes, Inc v Pontiac Housing Fund, Inc,* 319 Mich 310; 29 NW2d 704 (1947). See 77 Am Jur 2d, Vendor & Purchaser, § 28, pp 204–206. It is evident from the examination of this option that it was indeed just an option and not a land contract. There was no mutuality of obligation as evidenced by the document. Plaintiffs did not intend the document to establish an obligation on their part. Where the purchaser is not obligated to buy, the agreement is considered an option and not a contract. *LeBaron, supra,* at 315; 29 NW2d at 707. Furthermore, since the plaintiffs failed to exercise the option within the one-year period, they lost their right to repurchase the property thereunder.

" 'Acceptance of an option must be in strict compliance with the terms proposed by the option both as to the exact thing offered and within the time specified, or the right will be lost.

" 'Holder of an option seeking specific performance

has burden of showing his compliance with its terms.'
*Muirhead v Freimann* (syllabi), 270 Mich 181; [258 NW
238 (1935)]." *LEBaron, supra,* at 315; 29 NW2d 704, 707.

Plaintiffs also contend that a constructive trust
in their favor should be imposed on the property
to prevent unjust enrichment of the defendant.
However, the plaintiffs fail to state why such a
trust should be imposed.

There need be no proof of intent to create a
constructive trust. *Cerling v Hedstrom,* 51 Mich
App 338; 214 NW2d 904 (1974). A constructive
trust is in reality not a trust, but rather a judicial
remedy to which resort is had after the fact and
arises by operation of law. *Cerling, supra.* A con-
structive trust need not arise because the property
was wrongfully acquired, it may arise out of un-
conscionability and unjust enrichment. A construc-
tive trust may be based upon a breach of fiduciary
or confidential relationship, misrepresentation,
concealment, mistake, undue influence, duress or
fraud. *Chapman v Chapman,* 31 Mich App 576;
188 NW2d 21 (1971). The burden of proof is on the
person seeking to establish a constructive trust.
*MacKenzie v Fritzinger,* 370 Mich 284; 121 NW2d
410 (1963). *Cf, Chapman v Chapman, supra.*

The evidence presented at trial does not support
the plaintiffs' contention for imposition of a con-
structive trust. The evidence establishes that the
various documents executed concerning the prop-
erty were properly executed to effectuate the in-
tentions of the parties. There is no evidence of a
breach of a fiduciary or confidential relationship,
mistake, misrepresentation, concealment, undue
influence, duress or fraud. Defendant made every
reasonable effort to allow plaintiffs to reacquire
the property as evidenced by the land contract, the

lease agreement with option to buy, and the option to buy. Plaintiffs failed to reacquire the property under the conditions agreed upon by the parties. Therefore, they should not now be heard to complain of defendant's retention of legal title to the property.

Plaintiffs' final contention, that plaintiff Louis Grasman lacked mental capacity to execute the documents involved in this litigation, is meritless. *Wroblewski v Wroblewski,* 329 Mich 61; 44 NW2d 869 (1950), *Star Realty, Inc v Bower,* 17 Mich App 248; 169 NW2d 194 (1969).

Affirmed. Costs to defendant-appellee.