In re CARO AREA SERVICES FOR the HANDICAPPED, Debtor.

CARO AREA SERVICES FOR the HANDICAPPED, Plaintiff,

v.

MICHIGAN DEPARTMENT OF TRANSPORTATION and the State of Michigan, Defendants.

Bankruptcy No. 82–00727.
Adv. No. 84–9132.

United States Bankruptcy Court, E.D. Michigan, N.D.

Oct. 1, 1985.

MEMORANDUM OPINION DENYING
PLAINTIFF'S COMPLAINT TO
AVOID LIEN

ARTHUR J. SPECTOR, Bankruptcy Judge.

Caro Area Services for the Handicapped (CASH) commenced this adversary proceeding to determine the state of title regarding three buses whose certificates of title list the debtor as the owner. The debtor seeks an order declaring that to the extent that the Michigan Department of Transportation (MDOT) has any equitable lien on the buses, those liens may be set aside by the debtor in possession and preserved for the benefit of the estate. MDOT argues that the buses are property of the defendant, not the debtor, and that they are held in constructive trust for the State, or, in the alternative, that the State holds an equitable lien on the buses which is not subject to the avoidance powers of the debtor in possession.

Although the parties have not filed any dispositive motions, they have filed a stipulated statement of facts and responsive briefs which, along with the complaint and answer, permit us to adjudicate this matter in the context of cross-motions for summary judgment.

The relevant facts are as follows. On September 10, 1980 CASH and MDOT entered into an agreement whereby CASH was the recipient of a grant funded largely by the Urban Mass Transportation Administration (UMTA), an agency within the United States Department of Transportation. Under the agreement, CASH was to provide transportation services for the elderly and, towards that end, the State purchased three buses,[1] which were conveyed to the debtor. The agreement contained certain restrictions on the use of the buses, and further directed that the debtor would return the equipment to the State if it

Lambert, Leser, Hebert, Dahm, Giunta, Cook & Schmidt, P.C. by John J. Hebert, Bay City, Mich., for plaintiff.

Margaret A. Nelson, Asst. Atty. Gen., Lansing, Mich., for defendants.

---

1. Contemporaneously, the State also purchased some related communications equipment whose precise nature is undisclosed in the pleadings. The parties have at all times addressed both the buses and radio equipment as if title to them is governed by the same considerations, and we shall resolve this dispute under the same assumption. Any reference herein to "buses" applies equally to the radio equipment.

**440**

should cease using the buses for the purpose stated in the agreement:

> If, during [its useful life], any project equipment is not used in said manner or is withdrawn from transportation services, the Contractor [CASH] shall immediately notify the Department [MDOT] and shall return such project equipment to the Department in accordance with UMTA and Department procedures and shall reconvey the title to said equipment to the Department.

Further, Paragraph 10 of the agreement gave MDOT the right to terminate the project and recover the equipment upon the failure of the debtor to perform the agreed-upon services.

On July 27, 1982, CASH filed a petition for relief under Chapter 11 of the Bankruptcy Code. In its schedules and statement of affairs, the debtor did not list the buses as property of the estate or property held for another entity, nor did it list the defendant as a creditor. MDOT did not receive notice of the bankruptcy. The debtor's Disclosure Statement, Plan of Reorganization, and First Amended Plan of Reorganization all fail to make any mention of the buses or any obligation to the State arising therefrom. On February 2, 1984, the Court confirmed the First Amended Plan of Reorganization.

In May, 1984, the debtor in possession ceased operating the transportation service and stopped using the buses. In June, 1984, the director of CASH executed a resolution authorizing the transfer of the vehicles to Human Development Commission (another organization formed for the purpose of providing transportation services pursuant to state programs), and the buses were then transferred to that organization. The debtor neither requested nor received bankruptcy court authority to transfer the property. On December 4, 1984, CASH commenced the instant litigation.

■ MDOT first takes the position that despite the fact that legal title to the buses was listed in the name of CASH, the buses were not property of the estate because the debtor was merely holding title as trustee for the State. If so, then the buses would not be property of the estate by virtue of 11 U.S.C. § 541(d).[2] The State argues that under Michigan law a constructive trust may be declared where to do otherwise would lead to an inequitable or unconscionable result, citing *Children of Chippewa, Ottawa and Potowatomy Tribes v. Regents of the University of Michigan,* 104 Mich.App. 482, 492, 305 N.W.2d 522 (1981), *cert. denied* 459 U.S. 1088, 103 S.Ct. 572, 74 L.Ed.2d 934 (1982); and *Grasman v. Jelsema,* 70 Mich.App. 745, 752, 246 N.W.2d 322 (1976) in support. It claims that the vehicles were conveyed to the debtor solely for insurance and liability purposes, but that the agreement of the parties is clear evidence that CASH understood that it was holding the property for the benefit of the State rather than for itself. It concludes that these circumstances warrant the imposition of a constructive trust.

Additionally, MDOT argues that even if we decline to declare a constructive trust, it holds an enforceable equitable lien on the buses. It relies principally on a recent bankruptcy decision, *In re Madison County Economic Opportunity Commission,* A.P. No. 84–0171, (Bankr.S.D.Ill. June 24, 1985). There, the debtor purchased two vans from the Illinois Department of Transportation under a program similar (if not identical) to the one involved here. The fact that the vehicles were purchased with state and federal funds should have been entered on the titles, but was not. The court held that the

---

**2.** Section 541(d) states:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

state's title to the vans was unperfected according to Illinois law; however, it went on to hold that because the government had issued a grant for a particular purpose, it held a reversionary interest, or equitable lien, in the funds or assets purchased therewith. (Slip. op. at 7–8). The defendant herein asserts that the same result may be reached under Michigan law, and that the lien is superior to the debtor in possession's status as a judicial lien creditor.

Finally, the State argues that its equitable lien is not subject to avoidance by the debtor in possession. It points out that the debtor neither listed the property as an asset nor listed the defendant as a creditor, and therefore the debtor in possession's avoidance powers are inapplicable.

The debtor in possession points out, first, that the State's liens must be perfected by notation on the vehicle certificates of title, Mich.Comp.Laws § 257.217(1)(c); Mich. Stat.Ann. § 9.1917(1)(c). Since the certificates of title do not list MDOT's interest, their security interests are unperfected as a matter of state commercial law, subordinate to a judicial lien creditor under Mich. Comp.Laws § 440.9301; Mich.Stat.Ann. § 19.9301, and therefore avoidable by the trustee. The debtor also addresses the State's arguments for a constructive trust or equitable lien, arguing that no grounds exist in this case to grant either equitable remedy, and that even if such grounds existed, those rights are inferior to the rights of the debtor in possession to assert the powers of a judicial lien creditor. 11 U.S.C. § 544; 11 U.S.C. § 1107.

While the State's arguments in favor of our declaring a constructive trust or equitable lien are interesting, we ultimately have no reason to rule on those issues because we find that the debtor should be judicially estopped from asserting here either that the buses are property of the estate or that MDOT is a creditor of the estate. If the debtor is precluded from taking those positions, the lien avoidance powers of §§ 544 and 545 are simply unavailable to the debtor. *In re Northern Acres, Inc.,* 52 B.R. 641 (Bankr.E.D.Mich. 1985).

Judicial estoppel is a doctrine which may be applied when a party has successfully taken an affirmative position regarding material facts in prior court proceedings, and prevents that party from asserting an inconsistent position in later proceedings. *In re Johnson,* 518 F.2d 246, 252 (10th Cir.), *cert. denied sub nom, Clark v. Johnson,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975); *Smith v. Montgomery Ward & Co.,* 388 F.2d 291 (6th Cir.1968). The purpose of the doctrine generally is to protect the integrity of the judicial system by preventing parties from blithely asserting mutually inconsistent positions in successive court proceedings. *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598–9 (6th Cir.1982); *Konstantinidis v. Chen,* 626 F.2d 933 (D.C.Cir.1980).

In the case at bar, the debtor commenced this Chapter 11 case in 1982, and proceeded to confirmation early in 1984. The property was unlisted in the schedules, and no mention of the buses is made in the disclosure statement or plan. The buses were substantial assets, worth approximately $100,000 when new,[3] and essential to part of the debtor's business. Moreover, to the extent they secured a debt to MDOT, the security interests were potentially avoidable as unperfected. Had the debtor successfully litigated an avoidance action prior to confirmation,[4] it would have

---

**3.** Exhibit "A" to the Agreement lists the capital outlay as $100,600, which also included the communications equipment.

**4.** Without making a ruling on the merits, it does appear that the debtor would have stood a good chance of setting aside any equitable lien which the State may have had. There is no merit to MDOT's statement that equitable liens survive the trustee's "strong-arm" powers. That might

have been true under the former Bankruptcy Act, but the Bankruptcy Reform Act of 1978 effected a substantial change in the law. *See In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 119, 20 (Bankr.S.D.N.Y.1982). Equitable or other "secret" liens are precisely the sort of interests which the Code permits trustees to defeat. *Apparently contra, In re Gullifor,* 47 B.R. 450, 40 U.C.C.Rep. 1044 (E.D.Mich.1985).

brought a substantial amount of unencumbered property into the estate, which would, of course, have materially affected the extent to which other creditors could have been paid under the plan.

 By failing to list or make note of such substantial assets, the debtor asserted that it had no claim to the buses, and the case was fully administered by this Court in reliance upon that representation. If the debtor were to be allowed to assert, at this late date, that the buses were property of the estate, we would feel compelled, for the sake of consistency, to vacate the approval of the disclosure statement and plan and force the debtor to start anew. To do otherwise would be to allow the debtor to play too fast and loose with the facts. The State has not requested that the plan be set aside and, as a practical matter, that would be impossible, since the debtor has ceased operations; therefore, we simply estop the plaintiff from now arguing that the property was or is property of the estate.[5]

Since they are not property of the estate, the trustee lacks the power to avoid an unperfected security interest thereon. *In re Northern Acres, Inc., supra.* It is thus unnecessary for us to declare whether or not grounds for declaring a constructive trust or equitable lien exist. The effect of our holding is that the relative claims which the parties may have to the buses have slid through the debtor's Chapter 11 case without being administered and emerged post-confirmation, where they are unaffected by bankruptcy law considerations. Therefore, we do not hold that MDOT is the beneficiary of a constructive trust, nor do we rule that the State holds an equitable lien; we hold only that to the extent the State has rights in the buses or in the proceeds therefrom, those rights are not subject to attack by the debtor in possession under the Bankruptcy Code.

Accordingly, the debtor's request for a judgment declaring MDOT's interest in the buses to be subordinate to the debtor's interest is denied. Upon presentation, an order consistent with this opinion will be entered.

---

5. The only other logical finding we could make here is that the property has always been estate property, and that the schedules, statement of affairs and other pleadings (filed under oath) were false. The State does not allege that the debtor filed false pleadings, and we decline to make that finding.